**K275049** SPECIAL WARRANTY DEED

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

VA Form 26-6441a - October 1967
Section 1820, Title 38, U.S.C.

**TEXAS**

STATE OF TEXAS,

11/04/85   00096110  K275049   $ 5.00

County of ..... HARRIS ...................................

**KNOW ALL MEN BY THESE PRESENTS** that the Administrator of Veterans' Affairs, an Officer of the United States of America, whose address is Veterans Administration, Washington. D. C.  20420, hereinafter called Grantor for and in consideration of the sum of ten dollars ($10.00) and other valuable consideration

to him paid, and secured to be paid, by

Lee Roy M. Myers
10630 Hammerly #3062
Houston, TX 77043

hereinafter called Grantee(s), as follows:

has granted, sold, and conveyed, and by these presents does grant, sell, and convey unto the said Grantee(s) of

the County of ...................................................................., State of ......TEXAS................................................,

all that certain tract or parcel of land in the County of ................... Harris ................................., Texas, described as follows, to wit:

LOT NINETEEN (19), BLOCK EIGHT (8), KINGS LAKE FOREST, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE REPLAT THEREOF RECORDED IN VOLUME 279, PAGE 64 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

COMMONLY KNOWN AS 12215 CAROLA FOREST

FILED
Nov 4  3 30 PM 1985
COUNTY CLERK
HARRIS COUNTY, TEXAS

THIS CONVEYANCE IS SUBJECT TO ANY RESTRICTIVE COVENANTS, OUTSTANDING MINERAL INTERESTS AND EASEMENTS AFFECTING THE PROPERTY ABOVE DESCRIBED.

**TO HAVE AND TO HOLD** the above-described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said Grantee(s) and Grantee's successors or heirs and assigns forever, and Grantor does hereby bind himself and his successors to warrant and forever defend all and singular the said premises unto the said Grantee(s) and Grantee's successors or assigns, against every person whomsoever lawfully claiming, or to claim the same or any part thereof, by, through, or under Grantor.

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  Hold for  TEXAS AMERICAN  TITLE Co.  JM3

Exhibit 1
Page 1 of 2

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

IN WITNESS WHEREOF, Grantor, on the 10th day of June A.D. 19 85, has caused this instrument to be signed and sealed in his name and on his behalf by the undersigned Loan Guaranty Officer, being thereunto duly appointed, qualified, and acting pursuant to sections 212 and 1820 of Title 38, United States Code, and sections 36:4342 and 36:4520 of the regulations pursuant thereto as amended, and who is authorized to execute this instrument.

Harry N. Walters

As Administrator of Veterans' Affairs.

*By

F.M. McReaken

Loan Guaranty Officer
VA Regional Office, Houston, TX
(660-4189).   Pursuant to a delegation
of authority contained in VA Regulations
(38 CFR 36.4342).

THE STATE OF TEXAS,
County of ....Harris................ ........... .........................
    BEFORE ME, the undersigned authority on this day personally appeared ...   F.M. McReaken

......................................................................................................................., known to me to be the person whose name is subscribed to the foregoing instrument, who, being by me duly sworn, did say that he is a Loan Guaranty Officer of the Veterans Administration, an agency of the United States Government, and is duly authorized to execute this deed on behalf of the Grantor, the Administrator of Veterans' Affairs named, and acknowledged to me that he subscribed the name of said Administrator thereto and that he executed such instrument on behalf of said Administrator for the purposes and consideration therein expressed, and in the capacity stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE THIS THE   10th day of   June   , A.D. 19 85 .

[L.S.]

LOTA M. CHARLES
Notary Public, State of Texas
My Commission Expires May 11, 1988
Bonded Thru State Farm General Insurance Co.
Notary Public in and for—

...................................................... ..... County, Texas.

NOTE 1.—Delete (6) to (16) if entire consideration is paid.
*NOTE 2.— Print, typewrite or stamp names of Administrator of Veterans' Affairs and Loan Guaranty Officer; also names of Notary Public immediately underneath such signatures.

## CLERK'S CERTIFICATE

THE STATE OF TEXAS,
County of ........................................................ .............. } ss:

    I, ............. ....................  ...................................................................................... , County Clerk of the

County Court of said County, do hereby certify that the foregoing instrument of writing dated on the ......... . ...

day of ...... ... .. ........ .. ...... ...................., A.D. 19......., with its Certificate of Authentication, was filed for record

in my office on the ... .... ........................ day of .................. ................. ........................ .., A.D. 19.. . , at . ..... ...........

o'clock ... .................M., and duly recorded this ......................  . .. day of .............. .... ......... ................., A.D. 19.. ....,

at ................... o'clock .................M., in the ............................  ...................................... ... . records of said County,

in volume ................................., on pages ............................
    WITNESS MY HAND AND SEAL OF THE COUNTY COURT of said County, at office in ... ................... ....................

......................................................................... .... . ..................................., the day and year last above written.

    [L.S.]

County Clerk ...... ......................... ... .. . County, Texas.
By ...................................................... .., Deputy.

Exhibit 1
Page 2 of 2

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY NOTE
## (Fixed Rate - First Lien)

March 27, 2006                         HOUSTON                         Texas
[Date]                                 [City]                          [State]

12215 CAROLA FOREST DR, HOUSTON, TX  77044-

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $50,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Home123 Corporation

. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.465 %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning May 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 04/01/2021 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3351 Michelson Drive, Ste 400, Irvine, CA 92612 or at a different place if required by the Note Holder.

THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL INSTRUMENT
BY [signature] 2-19-20

TEXAS HOME EQUITY NOTE (Fixed Rate-First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-8035(TX) (0310)                    Form 3244.1 1/01
Page 1 of 4                            (rev. 10/03)
VMP Mortgage Solutions (800)521-7291   Initials: _____

Exhibit 2
Page 1 of 4

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $462.52

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of my default under any indebtedness not evidenced by this Note or the Security Instrument.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials:

-8035(TX) (0310)                    Page 2 of 4                    Form 3244.1 1/01 (rev. 10/03)

Exhibit 2
Page 2 of 4

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP®-8035(TX) (0310)                          Page 3 of 4                          Initials: ____

                                                                                   Form 3244.1 1/01 (rev. 10/03)

Exhibit 2
Page 3 of 4

**11. APPLICABLE LAW**

This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

**12. NO ORAL AGREEMENTS**

**THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| LEEROY M MYERS     -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

3/21/2006

*[Sign Original Only]*

Pay to the order of, without recourse

Home123 Corporation
P.

*Steve Nagy*
Steve Nagy
V.P./Records Management

Exhibit 2
Page 4 of 4

Return To:
Home123 Corporation

3351 Michelson Drive,
Ste 400
Irvine, CA 92612

**Z198524**
04/03/06  201113190

$100.00

Prepared By:
Home123 Corporation
3351 Michelson Drive,
Ste 400
Irvine, CA 92612

HC
FILED BY
FIDELITY NATIONAL TITLE

———————————— [Space Above This Line for Recording Data] ————————————

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY
SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

### NOTICE OF CONFIDENTIALITY RIGHTS:

**If you are a natural person, you may remove or strike any of the following
information from this instrument before it is filed for record in the public records:
your social security number or your driver's license number.**

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 15.
**(A) "Security Instrument"** means this document, which is dated  March 27, 2006
together with all Riders to this document.
**(B) "Borrower"** is LEEROY M MYERS AND BARBARA C MYERS

2006 APR -3  AM II: 34
COUNTY CLERK
HARRIS COUNTY, TEXAS
FILED

Borrower is the grantor under this Security Instrument.

**TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3044.1  1/01

VMP®-8036(TX) (0411).01    (rev. 10/03)
Page 1 of 18         Initials:

VMP Mortgage Solutions, Inc. (800)521-7291

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

Exhibit 3
Page 1 of 22

**(C) "Lender"** is Home123 Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 3351 Michelson Drive, Ste 400, Irvine, CA 92612

Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Eldon L. Youngblood
. Trustee's address is
2711 North Haskell Avenue, Suite 2700 LB 25, Dallas, Texas 75204

**(E) "Note"** means the promissory note signed by Borrower and dated   March 27, 2006
The Note states that Borrower owes Lender FIFTY THOUSAND AND 00/100
Dollars
(U.S. $ 50,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 04/01/2021          .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.
**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [*check box as applicable*]:

☐ Texas Home Equity Condominium Rider                ☐ Other:
☒ Texas Home Equity Planned Unit Development Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

VMP-8036(TX) (0411).01                    Page 2 of 18                    Form 3044.1   1/01 (rev. 10/03)

Exhibit 3
Page 2 of 22

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the

    County    of    HARRIS  :
    [Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT "A"

Parcel ID Number: 1107940000019        which currently has the address of
12215 CAROLA FOREST DR                    [Street]
HOUSTON             [City], Texas 77044 -    [Zip Code]
("Property Address"):

 TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

VMP-8036(TX) (0411).01          Page 3 of 18      Initials: _____ Form 3044.1  1/01 (rev. 10/03)

Exhibit 3
Page 3 of 22

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Initials: 

Form 3044.1   1/01 (rev. 10/03)

Exhibit 3
Page 4 of 22

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Exhibit 3
Page 5 of 22

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Exhibit 3
Page 6 of 22

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or

Exhibit 3
Page 9 of 22

Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be

deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upo̲n̲ ̲i̲n̲s̲t̲i̲t̲u̲t̲i̲o̲n̲

VMP®-8036(TX) (0411).01       Page 11 of 18       Initials: _____       Form 3044.1   1/01 (rev. 10/03)

Exhibit 3
Page 11 of 22

whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

Initials: _____

Exhibit 3
Page 12 of 22

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a

Exhibit 3
Page 13 of 22

Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

Initials:

VMP-8036(TX) (0411).01

Page 15 of 18

Form 3044.1   1/01 (rev. 10/03)

Exhibit 3
Page 15 of 22

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

Exhibit 3
Page 16 of 22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

---

**YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.**

---

LEEROY MYERS

Printed Name: _____
                *[Please Complete]*

Printed Name: BARBARA C. Myers
                *[Please Complete]*

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
LEEROY M MYERS          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower





VMP-8036(TX) (0411).01          Page 17 of 18          Form 3044.1  1/01 (rev. 10/03)

Exhibit 3
Page 17 of 22

**STATE OF TEXAS**
County of HARRIS

Before me   *Matthew Cole*                    on this day personally appeared

*Leroy M. Myers, Barbara C. Myers*

known to me (or proved to me on the oath of
or through   *N/A*                    *DL*                    ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this   *27*   day of   *March*   *2006*.

(Seal)

_____
Notary Public



MATTHEW COLE
MY COMMISSION EXPIRES
June 13, 2006

My Commission Expires:   *6/13/06*

VMP-8036(TX) (0411).01          Page 18 of 18          Initials: _____          Form 3044.1   1/01 (rev. 10/03)

Exhibit 3
Page 18 of 22

# TEXAS HOME EQUITY
# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 27th                day of
March, 2006                , and is incorporated into and shall be deemed to amend and supplement
the Security Instrument of the same date, given by the undersigned (the "Borrower") to secure Borrower's
Note to Home123 Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:12215 CAROLA FOREST DR, HOUSTON, TX  77044-

[Property Address]

The property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in covenants, conditions, and
restrictions filed in the Real Property records of the county in which the property is located (the
"Declaration"). The property is a part of a planned unit development described in the Declaration (the
"PUD"). The property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest. Insofar as permitted by Section 50(a)(6)(H), Article XVI of
the Texas Constitution, "homestead" shall include the elements of the property described by this Rider.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards,
including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the property; and

**TEXAS HOME EQUITY PLANNED UNIT DEVELOPMENT RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP -8037(TX) (0411)  Form 3150.44 1/01
Page 1 of 3                    Initials:
VMP Mortgage Solutions, Inc. (800)521-729

Exhibit 3
Page 19 of 22

(ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the property, or to common areas and facilities of the PUD, any proceeds payable to Borrower shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii)  termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by applicable law, may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

Exhibit 3
Page 20 of 22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

_____ (Seal)          _____ (Seal)
LEEROY M MYERS                   -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

VMP-8037(TX) (0411)                    Page 3 of 3                    Form 3150.44 1/01

Exhibit 3
Page 21 of 22

GF No. ██████

4.  Legal Description of land:

Lot Nineteen (19), in Block Eight (8), of REPLAT OF KINGS LAKE FOREST, SECTION ONE (1), an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 279, Page 64 of the Map Records of Harris County, Texas



ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in file number Sequence on the
date and at the time stamped hereon by me, and was duly RECORDED, in the
Official Public Records of Real Property of Harris County Texas on

APR - 3 2006

*Beverly B. Kaufman*

COUNTY CLERK
HARRIS COUNTY TEXAS

Exhibit 3
Page 22 of 22        2



**Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**

FILED
In the Office of the
Secretary of State of Texas

APR 07 2004

Corporations Section

# ASSUMED NAME CERTIFICATE
## FOR FILING WITH THE SECRETARY OF STATE

1. **The name of the corporation, limited liability company, limited partnership, or registered limited liability partnership as stated in its articles of incorporation, articles of organization, certificate of limited partnership, application for certificate of authority or comparable document is**

   New Century Mortgage Corporation

2. **The assumed name under which the business or professional service is or is to be conducted or rendered is**

   Home123 Corporation

3. **The state, country, or other jurisdiction under the laws of which it was incorporated,**

   **organized or associated is** California _____ **and the**

   **address of its registered or similar office in that jurisdiction is**

   18400 Von Karman, Suite 1000, Irvine, CA 92612

4. **The period, not to exceed 10 years, during which the assumed name will be used is**

   10 years

5. **The entity is a (check one):**

   **A.**
   ☒ **Business Corporation**          ☐ **Non-Profit Corporation**
   ☐ **Professional Corporation**      ☐ **Professional Association**
   ☐ **Limited Liability Company**     ☐ **Limited Partnership**
   ☐ **Registered Limited Liability Partnership**

   **B. If the entity is some other type business, professional or other association that is incorporated, please specify below (e.g., bank, savings and loan association, etc.)**

6. **If the entity is required to maintain a registered office in Texas, the address of the**

   **registered office is** 350 N St. Paul Street, Dallas, Texas 75201 _____

   _____ **and the name of its registered agent**

   **at such address is** C T Corporation System _____

   **The address of the principal office (if not the same as the registered office) is**

TX023 - 4/04/00 CT System Online

Exhibit 4
Page 1 of 2

7. If the entity is not required to or does not maintain a registered office in Texas, the office address in Texas is_____

and if the entity is not incorporated, organized or associated under the laws of Texas, the address of its place of business in Texas is_____

and the office address elsewhere is_____

8. The county or counties where business or professional services are being or are to be conducted or rendered under such assumed name are (if applicable, use the designation "ALL" or "ALL EXCEPT")

ALL_____

9. The undersigned, if acting in the capacity of an attorney-in-fact of the entity, certifies that the entity has duly authorized the attorney-in-fact in writing to execute this document.

By  _____
Signature of officer, general partner, manager, representative or attorney-in-fact of the entity
Patrick Flanagan, President

## NOTE

This form is designed to meet statutory requirements for filing with the secretary of state and is not designed to meet filing requirements on the county level. Filing requirements for assumed name documents to be filed with the county clerk differ. Assumed name documents filed with the county clerk are to be executed and acknowledged by the filing party, which requires that the document be notarized.

Form No. 503
Revised 9/99

TX022 - 4/04/00 CT System Online

ASSGN
I

20080202549
04/23/2008  ER  $16.00

## *ASSIGNMENT OF DEED OF TRUST*

Lenders Loan Number:
MIN

MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, **NEW CENTURY MORTGAGE CORPORATION**, its successors
and assigns, hereby assigns and transfers to **MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INC., its successors and assigns, PO Box 2026, Flint, MI 48501-2026**, all it right,
title and interest in and to a certain mortgage executed by **LEEROY M MYERS**, to **HOME123
CORPORATION** and bearing the date of **3/27/2006** in the original amount of **$50000** and filed
in the office of the Recorder of **HARRIS** County, State of **TX** in Document Number  and/or in
Volume , at Page .

1EE

Property described as:  LOT NINETEEN 19 IN BLOCK EIGHT 8 OF REPLAT OF KINGS
LAKE FOREST SECTION ONE 1 AN ADDITION IN HARRIS COUNTY TEXAS
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 279 PAGE 64
OF THE MAP RECORDS OF HARRIS COUNTY TEXAS

D

Signed on the 17th day of April, 2008.

NEW CENTURY MORTGAGE CORPORATION
BY ITS ATTORNEY IN FACT, BROWN & ASSOCIATES
(AND DESIGNEE OF FEDERAL NATIONAL MORTGAGE
ASSOCIATION BY JOSEPH GRIMES)

3OR

Signor  Regina Monts
Signor Title:  Assistant Secretary

STATE OF TEXAS          §

COUNTY OF HARRIS     §

On the 17th day of April, 2008, before me, a Notary Public, personally appeared Regina Monts, to
me known, whom being duly sworn, did say that she is the Assistant Secretary of Brown &
Associates, and that said instrument was signed on behalf of said corporation.

Notary Public

N. CORTEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm  Expires 10-29-2008

**RETURN TO:**
Brown & Associates
10592-A Fuqua, PMB 426
Houston, TX 77089

ER 006 - 99 - 2165

Exhibit 5
Page 1 of 2

ER 006 - 99 - 2166

20080202549
# Pages 2
04/23/2008    11:21:23 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
BEVERLY KAUFMAN
COUNTY CLERK
Fees 16.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit 5
Page 2 of 2

ASSGN
I

20080202549
04/23/2008  ER  $16.00

## *ASSIGNMENT OF DEED OF TRUST*

Lenders Loan Number:
MIN                                    MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, NEW CENTURY MORTGAGE CORPORATION, its successors
and assigns, hereby assigns and transfers to MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INC., its successors and assigns, PO Box 2026, Flint, MI 48501-2026, all it right,     1EE
title and interest in and to a certain mortgage executed by LEEROY M MYERS, to HOME123
CORPORATION and bearing the date of 3/27/2006 in the original amount of $50000 and filed
in the office of the Recorder of HARRIS County, State of TX in Document Number  and/or in
Volume , at Page .

Property described as:  LOT NINETEEN 19 IN BLOCK EIGHT 8 OF REPLAT OF KINGS      D
LAKE FOREST SECTION ONE 1 AN ADDITION IN HARRIS COUNTY TEXAS
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 279 PAGE 64
OF THE MAP RECORDS OF HARRIS COUNTY TEXAS

Signed on the 17th day of April, 2008.

NEW CENTURY MORTGAGE CORPORATION
BY ITS ATTORNEY IN FACT, BROWN & ASSOCIATES      3OR
(AND DESIGNEE OF FEDERAL NATIONAL MORTGAGE
ASSOCIATION BY JOSEPH GRIMES)

Signor/  Regina Monts
Signor Title:  Assistant Secretary

STATE OF TEXAS        §

COUNTY OF HARRIS      §

On the 17th day of April, 2008, before me, a Notary Public, personally appeared Regina Monts, to
me known, whom being duly sworn, did say that she is the Assistant Secretary of Brown &
Associates, and that said instrument was signed on behalf of said corporation.

Notary Public

N. CORTEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm Expires 10-29-2008

RETURN TO:
Brown & Associates
10592-A Fuqua, PMB 426
Houston, TX 77089

ER 006 - 99 - 2165

LN# 01876521

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.

A Certified Copy
Attest: 2/15/2019
**Diane Trautman, County Clerk**
**Harris County, Texas**

_____  Deputy
**Isabel C. Garcia**

CON:402508|ER006992165



Exhibit 6
Page 1 of 4

ER 006 - 99 - 2166

RP-2019-188566

20080202549
# Pages 2
04/23/2008   11:21:23 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
BEVERLY KAUFMAN
COUNTY CLERK
Fees 16.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.

A Certified Copy
Attest: 2/15/2019
**Diane Trautman, County Clerk**
Harris County, Texas

_____ Deputy
Isabel C. Garcia

CON:402508|ER006992165



Exhibit 6
Page 2 of 4

The above space is for recorder's use

This Assignment is being Re-recorded to add the Deed of Trust recording references - recorded 4/3/2006 Book/Page: RP 019-88 /2700/Z198524 .

RP-2019-188566

Exhibit 6
Page 3 of 4

RP-2019-188566

\# Pages 4

05/07/2019 10:47 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees  $24.00

RP-2019-188566

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit 6
Page 4 of 4

20090517332
11/12/2009   RP3   $20.00

**ASSIGNMENT OF NOTE
AND DEED OF TRUST**

BDFTE No.: ▮▮▮▮▮▮▮▮
Investor/Loan Type: FNMA

Date of Assignment:        Effective September 22, 2009

Assignor:                  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
                           LENDER AND LENDERS SUCCESSORS AND ASSIGNS

Assignee:                  LITTON LOAN SERVICING LP

Assignee's Mailing Address:   4828 LOOP CENTRAL DRIVE
(including county)            HOUSTON, TX  77081

NOTE and DEED OF TRUST--

Maker/Grantor:             BARBARA C. MYERS
                           LEEROY M. MYERS

Date:                      March 27, 2006

Original Amount:           $ 50,000.00

Payee:                     HOME123 CORPORATION

Trustee:                   ELDON L. YOUNGBLOOD

Recording Information:     CLERK'S FILE NO. Z198524
(including county)         (HARRIS)

Property (including any improvements) Subject to Deed of Trust:

LOT NINETEEN (19), IN BLOCK EIGHT (8), OF REPLAT OF KINGS LAKE FOREST, SECTION ONE (1), AN
ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN
VOLUME 279, PAGE 64 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS

After Recording Return To:
Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Blvd., Suite 100
Addison, TX  75001
Attn: NDeX Title Services, LLC

*  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ASGNDOT.rpt - (04/24/08) / Ver-05                                      Page 1 of 2

HOLD FOR BDF

Exhibit 7
Page 1 of 3

RP 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

ASSIGNMENT OF NOTE
AND DEED OF TRUST

BDFTE No.: █████████
Investor/Loan Type: FNMA

WHEREAS, on the date of assignment indicated above, for value received, Holder of the Note and Deed of Trust transferred and assigned each to Assignee, and warranted that the lien was valid against the property in the priority indicated; and

WHEREAS, the Holder of the Note and Deed of Trust and the Assignee desire to evidence and memorialize such transfer and assignment and warranty by this document;

NOW THEREFORE, for value received Holder of the Note and Deed of Trust does hereby evidence and memorialize its transfer and assignment of the Note and Deed of Trust to Assignee on the date of assignment indicated above.

When the context requires, singular nouns and pronouns include the plural.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
LENDER AND LENDERS SUCCESSORS AND ASSIGNS

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

BY: _____
Marti Noriega
ITS: Assistant Vice President

CORPORATE ACKNOWLEDGMENT

State of _____Texas_____ §
County of _____Harris_____ §

Before me, the undersigned Notary Public, on this day personally appeared   **Marti Noriega**  , who is the _Assistant Vice President_ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER AND LENDERS SUCCESSORS AND ASSIGNS, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _9_ day of _November_, 2009.

My Commission Expires:

_3/19/2011_

Notary Public Signature

**MATTIE MILLER**
Printed Name of Notary Public

MATTIE W. MILLER
Notary Public, State of Texas
My Commission Expires
March 19, 2011

PREPARED BY AND AFTER RECORDING RETURN TO: BDFTE, L.L.P.
15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001

ASGNDOT.rpt - (04/24/08) / Ver-05

Page 2 of 2

Exhibit 7
Page 2 of 3

BP 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

RP 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



ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
   I hereby certify that this instrument was FILED in file number Sequence on the date and at time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County Texas on

NOV 12 2009

Beverly B. Kaufman

COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED

2009 NOV 12 PM 2: 04

COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit 7
Page 3 of 3

20110300687
07/21/2011   RP1   $20.00

Recording Request By, Prepared by and return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928

## ASSIGNMENT OF DEED OF TRUST

This Corrective Assignment of Deed of Trust is a correction of that certain Assignment of Deed of
Trust recorded on 11/12/2009 as Film Code 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 in the Clerk's Office of Harris County,
Texas, wherein by scrivener's error or mistake the Assignment of Deed of Trust did not contain
an assignee or the Deed of Trust recording information and this instrument is made to include
said assignee and Deed of Trust recording information and in all other respects confirms said
former Assignment of Deed of Trust

Min Number [REDACTED]                MERS Telephone No. 1-888-679-6377

**FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.**, whose
address is P.O. Box 2026, Flint, MI 48501-2026, does hereby assign and transfer to:

**Litton Loan Servicing LP**, its successors and assigns, forever
Whose address is 4828 Loop Central Drive, Houston, TX 77081,

All its right, title and interest in and to a certain deed of trust from **LEEROY M MYERS** to
**HOME123 CORPORATION** for $50,000.00 dated 3/27/2006 of record on 4/3/2006 at Document
Number **Z198524**, in the **Harris** County Clerk's Office, State of TX.

Property Address: 12215 Carola Forest Dr, Houston, TX 77044
Legal description: LOT NINETEEN (19), IN BLOCK EIGHT (8), OF REPLAT OF KINGS LAKE
FOREST, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO
THE MAP OF PLAT THEREOF RECORDED IN VOLUME 279, PAGE 64 OF THE MAP
RECORDS OF HARRIS COUNTY, TEXAS.

Executed this 6-21-2011.
**EFFECTIVE AS OF 11/2/2009**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.

By:    Elizabeth Willard
Title:    Assistant Secretary

FILED FOR RECORD
8:00 AM

JUL 21 2011

Stan Stanart
County Clerk, Harris County, Texas

Page 1 of 2

State of Texas

County of Harris

This instrument was acknowledged before me on 6-_21_-2011 by Elizabeth Willard the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., a Delaware Corporation, on behalf of said corporation.

Notary Public in and for the State of Texas
Notary's Printed Name: Mary A. Johnson
My Commission Expires: 3/23/2013

DOT for $50,000.00 dated 3/27/2006



MARY A. JOHNSON
My Commission Expires
March 23, 2013

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

JUL 21 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Exhibit 8
Page 2 of 2

RP-2018-510752
11/09/2018 ER $20.00

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

***This Assignment is being recorded to correct and replace the Assignment recorded on 07/21/2011 as Book/Page/Instrument# RP 078-22/1822/20110300687 in the records of the Clerk of Harris County, TX to correct the Security Instrument Reference***

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** whose address is **P.O. BOX 2026, FLINT, MI 48501-2026,** (ASSIGNOR), does hereby grant, assign and transfer to **LITTON LOAN SERVICING, LP,** whose address is **4528 LOOP CENTRAL DRIVE, HOUSTON, TX 77081,** (ASSIGNEE). its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 3/27/2006
Original Loan Amount: **$50,000.00**
Executed by (Borrower(s)): **LEEROY M MYERS & BARBARA C MYERS**
Original Trustee: **ELDON L. YOUNGBLOOD**
Original Beneficiary: **HOME123 CORPORATION**
Filed of Record: In Book **RP 019-88**, Page **2700**,
Document/Instrument No: **Z198524** in the Recording District of **HARRIS, TX**, Recorded on 4/3/2006.

Property more commonly described as: **12215 CAROLA FOREST DR, HOUSTON, TEXAS 77044**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____10-24-2018_____

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____    Witness Name: _____
        Donna Brammer                                          V. Gumbie
Title: _____
        Assistant Secretary

MIN# ████████████    MERS PH# 1-888-679-MERS

Exhibit 9
Page 1 of 3

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED. AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _Texas_
County of _Harris_

On _10-24-18_, before me, _Jose Berruete_, a Notary Public, personally appeared _Donna Brammer_, _Assistant Secretary_ of/for **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct. I further certify _Donna Brammer_, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _Jose Berruete_
My commission expires: _8-8-2021_

JOSE BERRUETE
Notary Public, State of Texas
Comm. Expires 08-08-2021
Notary ID 131238560

RP-2018-510752

Exhibit 9
Page 2 of 3

RP-2018-510752

RP-2018-510752

\# Pages 3

11/09/2018 11:35 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees   $20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit 9
Page 3 of 3

20110045150
02/01/2011   ER   $20.00

**ASSGN**
X

Recording Request By, Prepared by and return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928

ER 021 - 75 - 2106

## ASSIGNMENT OF DEED OF TRUST

Loan
FNMA Loan #:

**FOR VALUE RECEIVED,** Litton Loan Servicing LP, its successors and assigns, whose address is 4828 Loop Central Drive, Houston, TX 77081, does hereby assign and transfer to:

**Green Tree Servicing LLC,** its successors and assigns, forever
Whose address is 7360 South Kyrene Rd, T314, Tempe, AZ 85283,

**1EE**

All its right, title and interest in and to a certain deed of trust from **LEEROY M MYERS AND BARBARA C MYERS** to **HOME123 CORPORATION** for **$50,000.00** dated **3/27/2006** of record on **4/3/2006** at Document Number **Z198524**, in the **HARRIS** County Clerk's Office, State of TX.

Property Address: 12215 Carola Forest Dr, Houston, TX 77044
Legal Description: LOT NINETEEN (19), IN BLOCK EIGHT (8), OF REPLAT OF KINGS LAKE FOREST, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 279, PAGE 64 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS

**D**

Executed January 26, 2011.

Litton Loan Servicing LP by and through its attorney in fact Charles A. Brown & Associates, P.L.L.C., dba Brown & Associates

**3OR**

By: _____ Regina Monts
Title:   Secretary

Exhibit 10
Page 1 of 3

CORPORATE ACKNOWLEDGEMENT

State of Texas

County of Harris

On January 26, 2011, before me, the undersigned Notary Public, in and for said state and county, personally appeared Regina Monts the Secretary of Charles A. Brown & Associates, P.L.L.C., dba Brown & Associates, attorney in fact for Litton Loan Servicing, LP, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.



_____
Notary Public in and for the State of Texas

Notary Public

JESSE BETANCOURT JR.
NOTARY PUBLIC
STATE OF TEXAS
MY COMMISSION
EXPIRES 4-03-2014

Mortgage for $50,000.00 dated 3/27/2006

ER 021 - 75 - 2107

Exhibit 10
Page 2 of 3

ER 021 - 75 - 2108

20110045150
# Pages 3
02/01/2011   13:54:39 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit 10
Page 3 of 3

RP-2018-489244   10/26/2018   ER   $20.00

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC**, whose address is 345 ST. PETER STREET, ST. PAUL, MN 55102, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST**, whose address is C/O PRETIUM MORTGAGE CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET, #2100, MINNEAPOLIS, MN 55402, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **3/27/2006**
Original Loan Amount: **$50,000.00**
Executed by (Borrower(s)): **LEEROY M MYERS & BARBARA C MYERS**
Original Trustee: **ELDON L. YOUNGBLOOD**
Original Beneficiary: **HOME123 CORPORATION**
Filed of Record: In Book **RP 019-88**, Page **2700**,
Document/Instrument No: **Z198524** in the Recording District of **HARRIS, TX**, Recorded on **4/3/2006**.

Property more commonly described as: **12215 CAROLA FOREST DR, HOUSTON, TEXAS 77044**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____9/19/18_____

**DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC, BY PRETIUM MORTGAGE CREDIT PARTNERS I LOAN ACQUISITION, LP, ITS ATTORNEY-IN-FACT**

By: **JOHN LYNCH**
Title: **AUTHORIZED SIGNATORY**

Witness Name: **CALVIN MEYER**

Exhibit 11
Page 1 of 3

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **MINNESOTA**
County of    **HENNEPIN**

On ___**9·19·18**___ , before me, **THU VAN WITTMANN**, a Notary Public, personally appeared **JOHN LYNCH, AUTHORIZED SIGNATORY of/for PRETIUM MORTGAGE CREDIT PARTNERS I LOAN ACQUISITION, LP, AS ATTORNEY-IN-FACT FOR DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC SOMETIMES KNOWN AS GREEN TREE SERVICES LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **MINNESOTA** that the foregoing paragraph is true and correct. I further certify JOHN LYNCH, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_Thu Van Wittmann_

(Notary Name): **THU VAN WITTMANN**
My commission expires: **01/31/2023**

THU VAN WITTMANN
Notary Public
State of Minnesota
My Commission Expires
January 31, 2023

RP-2018-489244

Exhibit 11
Page 2 of 3

RP-2018-489244

# Pages 3

10/26/2018 11:23 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees   $20.00

RP-2018-489244

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

Stan Stanart

COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit 11
Page 3 of 3

Selene Finance LP
PO Box 9096
Temecula, CA 92589-9096



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
Selene Finance LP
P.O. Box 71243
Philadelphia, PA   19176-6243

Send Correspondence to:
Selene Finance LP
PO Box 422039
Houston, TX  77242-4239

20210201-162

LEEROY MYERS
12215 CAROLA FOREST DR
HOUSTON, TX 77044-5023



9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 768-3759
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

01/29/2021

LEEROY MYERS
12215 CAROLA FOREST DR
HOUSTON, TX 77044-5023

Re:   Loan #:        ▮▮▮▮▮
      Property:    12215  CAROLA FOREST D
                   HOUSTON, TX 77044

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear Mortgagor(s):

Selene Finance LP ("Selene"), on behalf of the owner and holder of your mortgage loan, and in accordance with the referenced Deed of Trust/Mortgage and applicable state laws, provides you with formal notice of the following:

The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

To cure this default, you must pay all amounts due under the terms of your Note and Deed of Trust/Mortgage. As of 01/29/2021, your loan is due for 07/01/2009 and the total amount necessary to cure your default is $104,703.90, which consists of the following:

| | |
|---|---|
| Next Payment Due Date | 07/01/2009 |
| Total Monthly Payments Due: | $100,457.12 |
| Late Charges: | $624.50 |
| Uncollected NSF Fees: | $0.00 |
| Other Fees: | $0.00 |
| Corporate Advance Balance: | $3,622.28 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | **$104,703.90** |

As of 01/29/2021, the current outstanding principal balance is $43,529.12 and the total debt you owe is $92,249.33.

If you have not cured the default within thirty-five (35) days of this notice, Selene will accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable. Your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Deed of Trust/Mortgage and applicable state laws.

The total amount you must pay to cure the default stated above must be received by 03/05/2021.

Note that between the date this letter was issued and 03/05/2021 additional regularly scheduled monthly payments, charges, costs and fees may become due. For the exact amount you must pay to cure your default please contact our office at (877) 768-3759.

Please include your loan number and property address with your payment and send to:

> Selene Finance LP
> P.O. Box 71243
> Philadelphia, PA 19176-6243

You may also make a payment by wire transfer using the following information:

> Bank:            Signature Bank
> ABA:             026013576
> Account No.:     1503088408

You have the right to cure the default after acceleration and the right to bring a court action to claim that your loan is not in default or any other defense to acceleration and sale that you may have. This notice remains in effect until the default is cured. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Selene offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar options. If you would like to learn more about these programs, you may contact the Loan Resolution Department at (877) 768-3759.

According to Texas Property Code 51.0025, you are advised that Selene may administer the foreclosure of your property because Selene is representing Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust, the mortgagee under a servicing agreement with Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. All inquiries, notices, payments, correspondence, and other communications concerning your loan must be directed to Selene for resolution, not to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. Selene's address for correspondence is Selene Finance LP, 9990 Richmond Avenue, Suite 400 South, Houston, TX 77042. We can also be reached toll free at (877) 768-3759.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call (800) 569-4287.

Your file has been assigned to Scott Gentry, one of Selene's Loss Mitigation Consultants. Please do not hesitate to contact Scott Gentry with any questions so that the review process can move quickly.

Sincerely,

Scott Gentry
Loan Resolution Department

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

**Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.**

**For Servicemembers and their Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and twelve months after the servicemember's active duty service. Selene will not foreclose on the property of a servicemember or his or her dependent during that time, except pursuant to a court order. You also may be entitled to other protections under these laws, including interest rate and fee relief. Please contact us to learn more about your rights.

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

Selene Finance LP
PO Box 9096
Temecula, CA 92589-9096



9314 7100 1170 1054 4998 08

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

**RETURN RECEIPT REQUESTED**

Send Payments to:
Selene Finance LP
P.O. Box 71243
Philadelphia, PA   19176-6243

Send Correspondence to:
Selene Finance LP
PO Box 422039
Houston, TX  77242-4239

20210201-162

LEEROY MYERS
12215 CAROLA FOREST DR
HOUSTON, TX 77044-5023



9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 768-3759
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

01/29/2021

LEEROY MYERS
12215 CAROLA FOREST DR
HOUSTON, TX 77044-5023

Sent Via Certified Mail
9314 7100 1170 1054 4998 08

Re:     Loan #:        ▮▮▮▮▮
        Property:      12215  CAROLA FOREST D
                       HOUSTON, TX 77044

### NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear Mortgagor(s):

Selene Finance LP ("Selene"), on behalf of the owner and holder of your mortgage loan, and in accordance with the referenced Deed of Trust/Mortgage and applicable state laws, provides you with formal notice of the following:

The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

To cure this default, you must pay all amounts due under the terms of your Note and Deed of Trust/Mortgage. As of 01/29/2021, your loan is due for 07/01/2009 and the total amount necessary to cure your default is $104,703.90, which consists of the following:

| | |
|---|---|
| Next Payment Due Date | 07/01/2009 |
| Total Monthly Payments Due: | $100,457.12 |
| Late Charges: | $624.50 |
| Uncollected NSF Fees: | $0.00 |
| Other Fees: | $0.00 |
| Corporate Advance Balance: | $3,622.28 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | **$104,703.90** |

As of 01/29/2021, the current outstanding principal balance is $43,529.12 and the total debt you owe is $92,249.33.

If you have not cured the default within thirty-five (35) days of this notice, Selene will accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable.  Your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Deed of Trust/Mortgage and applicable state laws.

The total amount you must pay to cure the default stated above must be received by 03/05/2021.

Note that between the date this letter was issued and 03/05/2021 additional regularly scheduled monthly payments, charges, costs and fees may become due. For the exact amount you must pay to cure your default please contact our office at (877) 768-3759.

Please include your loan number and property address with your payment and send to:

Selene Finance LP
P.O. Box 71243
Philadelphia, PA 19176-6243

You may also make a payment by wire transfer using the following information:

Bank:          Signature Bank
ABA:           026013576
Account No.:   1503088408

You have the right to cure the default after acceleration and the right to bring a court action to claim that your loan is not in default or any other defense to acceleration and sale that you may have. This notice remains in effect until the default is cured. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Selene offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar options. If you would like to learn more about these programs, you may contact the Loan Resolution Department at (877) 768-3759.

According to Texas Property Code 51.0025, you are advised that Selene may administer the foreclosure of your property because Selene is representing Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust, the mortgagee under a servicing agreement with Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. All inquiries, notices, payments, correspondence, and other communications concerning your loan must be directed to Selene for resolution, not to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. Selene's address for correspondence is Selene Finance LP, 9990 Richmond Avenue, Suite 400 South, Houston, TX 77042. We can also be reached toll free at (877) 768-3759.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call (800) 569-4287.

Your file has been assigned to Scott Gentry, one of Selene's Loss Mitigation Consultants. Please do not hesitate to contact Scott Gentry with any questions so that the review process can move quickly.



Sincerely,

Scott Gentry
Loan Resolution Department

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

**Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.**

**For Servicemembers and their Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and twelve months after the servicemember's active duty service. Selene will not foreclose on the property of a servicemember or his or her dependent during that time, except pursuant to a court order. You also may be entitled to other protections under these laws, including interest rate and fee relief. Please contact us to learn more about your rights.

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705.  A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.