# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST,** | § § § § § § | |
| **Plaintiff** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 22-88** |
| **LEEROY M. MYERS and BARBARA MYERS,** | § § § § | |
| **Defendants** | § § | |

## DEFENDANTS' RULE 12 MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Leeroy M. Myers and Barbara Myers present their objections under

Rule 12 as follows.

Respectfully submitted,

/s/ Ira D. Joffe
Ira D. Joffe
State Bar No. 10669900
Attorney for Defendants
6750 West Loop South
Suite 920
Bellaire, TX 77401
(713) 661-9898
(888) 335-1060 Fax
ira.joffe@gmail.com

## TABLE OF CONTENTS

I.  FAILURE TO STATE A COMPLAINT UPON WHICH RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   A.  Limitations Expired in 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   B.  Even If Limitations Had Not Expired in 2014, it Would Have Expired Before this Case Was Filed on January 10, 2022 . . . . . . . . . . . . . . . 7
   C.  The Plaintiff Lacks Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II. INSUFFICIENT PROCESS AND INSUFFICIENT SERVICE OF PROCESS
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

Cases:

*Burney v. Citigroup Glob. Mkts. Realty Corp.*, 244 S.W.3d 900 (Tex. App. - Dallas, 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Comp-E-Ware Tech. Assocs. v. Mushkin Inc.*, 629 SW 3d 549 (Tex. App – Fort Worth, 2021, rehearing denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ellis v. Great SW Corp.*, 646 F.2d 1099 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . 10

*Estate of Erwin*, No. 07-16-00130-CV, Tex. App. - Amarillo, January 18, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562 (Tex. 2001) . . . . . . 2

*In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wind Mountain Ranch, LLC v. City of Temple*, 333 S.W.3d 580 (Tex. 2010) . . . . 5

Statutes and Rules:

Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 12(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 15

Fed. R. Civ. P. 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

Fed. R. Civ. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Civ. Prac. & Rem. Code §16.035 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

Tex. Civ. Prac. & Rem. Code §16.035(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Civ. Prac. & Rem. Code §16.035(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Civ. Prac. & Rem. Code §16.036 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5

Tex. Civ. Prac. & Rem. Code §16.036(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Civ. Prac. & Rem. Code §16.036(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. R. Civ. P. 736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7

Tex. R. Civ. P. 736.11(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## I.   FAILURE TO STATE A COMPLAINT UPON WHICH RELIEF CAN BE GRANTED

### A.   Limitations Expired in 2014

1.   The Complaint fails to state a claim upon which relief can be granted because limitations expired long ago. Fed. R. Civ. P. 12(b)(6).

2.   Wilmington's claim to foreclose on the Myers' homestead is subject to the four year limitations period in Tex. Civ. Prac. & Rem. Code §16.035.

> Sec. 16.035.  LIEN ON REAL PROPERTY.
>
> (a)  A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.
>
> (b)  A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.
>
> (c)  The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when a cause of action on an outstanding real property lien has accrued for more than four years, except as provided by:
>
> > (1)  Section 16.062, providing for suspension in the event of death;  or
> >
> > (2)  Section 16.036, providing for recorded extensions of real property liens.
>
> (d)  On the expiration of the four-year limitations period, the real

*WILMINGTON SAVINGS V. MYERS* – Defendants' Rule 12 Motions - Page 1

property lien and a power of sale to enforce the real property lien become void.

(e) If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.

(f) The limitations period under this section is not affected by Section 3.118, Business & Commerce Code.

3.    The cause of action accrued, and limitations began running, when the loan was accelerated. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) ("*Holy Cross*").

4.    The court can take judicial notice that the Note was first accelerated no later than June 11, 2010, when the Verified Tex. Rule Civ. P. 736 Application For Home Equity Foreclosure Order by Litton Loan Servicing, LP in Cause No. 2010-36072 was filed in the 129th Judicial District, Harris County, Texas ("First Expedited Application"). Defendants' Exhibit 1.

5.    "[N]otice of filing an expedited application for foreclosure after the requisite notice of intent to accelerate is sufficient to constitute notice of acceleration." *Burney v. Citigroup Glob. Mkts. Realty Corp.*, 244 S.W.3d 900, 904 (Tex. App. - Dallas, 2008, no pet.)("*Burney*").

6.    It actually accrued earlier. Paragraph 10 in the Affidavit In Support Of Home

Equity Application for the First Expedited Application said "The required notice of default and notice of acceleration were sent to the appropriate parties by certified mail after the breach of the loan agreement according to the security instrument, Tex. Prop. Code §51.002, and applicable law." Defendants' Exhibit 1, 7.

7.      The August 19, 2013, letter on behalf of Green Tree Servicing, LLC said that it rescinded "the notice of acceleration dated October 5, 2009 and all prior notices of acceleration." That was submitted on April 17, 2017, as their Exhibit F-1 in Civil Action 4:16-cv-1053 at Doc. 23-6. Defendants' Exhibit 2,12.

8.      That alleged unilateral rescission in 2013 could not have been made in compliance with Tex. Civ. Prac. & Rem. Code §16.038, which only became effective on June 17, 2015.[1]

9.      While it may have rescinded the acceleration letter, it did not claim to undo the acceleration as a matter of law caused by filing the Rule 736 Application on June 11, 2010. Nor could it.

10.     It did not show compliance with the statutory device in Tex. Civ. Prac. & Rem. Code §16.036, specifically referred to in §16.035(c)(2), that regulates the reset

---

[1]Sec. 16.038.  RESCISSION OR WAIVER OF ACCELERATED MATURITY DATE. Added by Acts 2015, 84th Leg., R.S., Ch. 759 (H.B. 2067), Sec. 1, eff. June 17, 2015.

of limitations. It requires a written agreement between the parties, signed by

Mr. Myers, and the filing of that agreement in the property records.  Those

requirements were not met.

> Sec. 16.036.  EXTENSION OF REAL PROPERTY LIEN.
> (a)  The party or parties primarily liable for a debt or obligation secured by a real property lien, as that term is defined in Section 16.035, may suspend the running of the four-year limitations period for real property liens through a written extension agreement as provided by this section.
>
> (b)   The limitations period is suspended and the lien remains in effect for four years after the extended maturity date of the debt or obligation if the extension agreement is:
>
> (1)  signed and acknowledged as provided by law for a deed conveying real property;  and
>
> (2)  filed for record in the county clerk's office of the county where the real property is located.
>
> (c)   The parties may continue to extend the lien by entering, acknowledging, and recording additional extension agreements...

11.   "A party who sues to recover real property subject to a lien or who intends to

foreclose on a lien encumbering real property must do so within four years of

the date on which the cause of action accrues. TEX. CIV. PRAC. & REM.

CODE § 16.035(a). "The party or parties primarily liable for a debt or

obligation secured by a real property lien" may suspend the statute of

limitations on the lien by executing a written extension agreement. Id. § 16.036(a). The Code further requires that any such agreements are to be filed in the county clerk's office and "signed and acknowledged as provided by law for a deed conveying real property." Id. § 16.036(b)." *Wind Mountain Ranch, LLC v. City of Temple*, 333 S.W.3d 580, 581 (Tex. 2010).

12.     "Guided by the principle that the words the Legislature uses are the clearest guide to its intent, we begin our analysis with the statute's plain language. When the words of the statute are clear and unambiguous we interpret them according to their plain and common meaning. That the Civil Practice and Remedies Code requires an extension agreement to be recorded is not in dispute...The Code's requirements for recording an extension agreement are clear and unambiguous; we therefore decline to look beyond the statute's plain language." *Id. at 581-582, internal citations omitted*.

13.     When even an agreement between the parties cannot trump a statute, it certainly cannot be done by the unilateral declarations in the loan servicer's rescission letter attempting to prolong limitations by ignoring the statutory requirements in §§16.035 and 16.036 and binding precedent.

14.     "In effect, Pullen asks this court to ignore the plain language of the applicable statute; TEX. EST. CODE ANN. § 53.104(b) (West 2014), and allow the

parties to decide what is reasonable for attorney ad litem fees in an estate proceeding. This we cannot do. The statute plainly states that the compensation for an attorney ad litem will be "set by the court"; id., and in construing statutes, we must ascertain and give effect to the Legislature's intent as expressed by the plain language of the statute. City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008). Nowhere does the applicable statute indicate that attorney ad litem fees may be set by agreement of the parties or a Rule 11 agreement; see TEX. EST. CODE ANN. § 53.104(b) (West 2014), and Rule 11 does not contain any language that would trump that section." *Estate of Erwin*, No. 07-16-00130-CV, Tex. App. - Amarillo, January 18, 2018.

15. The rescission letter failed under the statute in two ways. It was not signed by Mr. Myers and it was not filed in the property records. It did not reset limitations after acceleration.

16. Therefore, limitations expired as a matter of law no later than on June 11, 2014, four years after the acceleration caused by the June 11, 2010 filing of the First Expedited Application.

17. The Court lacks jurisdiction over Wilmington's expired claim and the case should be dismissed with prejudice.

**B.      Even If Limitations Had Not Expired in 2014, it Would Have Expired Before this Case Was Filed on January 10, 2022**

18.    The court can take judicial notice that on October 30, 2015, Green Tree Servicing, LLC filed an Application For An Expedited Order Under Rule 736 On a Home Equity Loan in Cause No. 2015-65145 in the 151st Judicial District, Harris County, Texas ("Second Expedited Application"). Defendant's Exhibit 3. If the loan had not already been accelerated, and limitations had not already expired, then that would have been an acceleration as a matter of law. *Burney* at 904.

19.    However, Paragraph 5.G says "Before this application was filed, any other action required to initiate a foreclosure proceeding by Texas law or the loan agreement, contract, or lien sought to be foreclosed was performed." Defendants' Exhibit 3, 2. That means an acceleration letter was sent before the case was filed.

20.    Exhibit D in support of this Second Expedited Application was a January 13, 2015, default letter from Green Tree to Mr. Myers. It included "Your default consists of: **Failure to submit your monthly payments due 07/01/2009 through 01/01/2015.** Emphasis in the original. Defendant's Exhibit 4, 3.

21.    The sixth paragraph began "If you fail to cure the default within 30 days from

the date of this notice, the maturity of this loan is accelerated and full payment of all amounts due under the loan agreement is required without further notice from us." *Id.* That was definite, not conditional.

22.   The cure was not made. The acceleration date was therefore February 12, 2015, and limitations would have expired four years later on February 12, 2019.

23.   The court can take judicial notice that February 12, 2015 is more than four years after the acceleration as a matter of law caused by the June 11, 2010, filing of the first Expedited Application.

24.   It was also a year before February 16, 2016, when the Second Expedited Application was  automatically abated by Tex. R. Civ. P. 736.11(a) when Mr. Myers filed Cause No. 2016-09805 in the 215th Judicial District, Harris County.  During that year the first year of the four years in the limitations period expired and only three were left.

25.   On February 20, 2016, the case was removed here in Civil Action 4:16-cv-1053, which was resolved on June 14, 2017. [Doc. 26 in that case]. The request for a new trial was denied on September 13, 2017.

26.   The Myers' calculations are based on presuming equitable tolling of limitations for the one year and seven months from February 2016 to September 2017. After that, the clock began running again.

27.   On November 18, 2019, Wilmington filed the Third Expedited Application in Cause No. 2019-83092 in the127th Judicial District, Harris County, Texas.

28.   It voluntarily non-suited the case on January 7, 2021. Defendant's Exhibit 5. The nonsuit made the filing a nullity. "Finally, when a case has been voluntarily and timely nonsuited, the effect is to render the case as if it had never been filed. *Xerox Com. Sols., L.L.C. v. Segura*, 579 S.W.3d 170, 174-75 (Tex. App.-El Paso 2019, no Pet.)." *Comp-E-Ware Tech. Assocs. v. Mushkin Inc.*, 629 SW 3d 549, 556 Tex. App – Fort Worth, 2021, rehearing denied).

29.   From September 13, 2017 to January 7, 2021 was approximately three years and four months.  Added to the year that had already elapsed, and allowing for any period of potential tolling, that is roughly four years and four months after the loan was intentionally accelerated by the February 12, 2015, deadline set by the January 13, 2015, letter. Defendants' Exhibit 4, 3.

30.   Again, limitations expired.

31.   The current case was not filed until January 10, 2022, almost another year after the January 7, 2021, nonsuit, or five years and four months after the relevant acceleration.

32.   Then there was the documented lack of diligence in getting the summons served.  On June 28, 2022, Wilmington filed a May 10, 2022 letter confirming

that an anonymous person allegedly served the summons under Rule 5. Serving and Filing Pleadings and Other Papers and not Rule 4. Summons. "After many attempts to serve in person and on your attorney, we are serving by mail pursuant to Rule 5(b)(2)(C)." Doc. 15.

33.   It was refiled ten days later on July 8, 2022, with an affidavit from counsel saying it was true and correct. Doc. 16.

34.   Admitting to allegedly serving the summons under the wrong rule on May 10, 2022, a month after the 90 day of April 10, 2022, deadline in Rule 4 expired did not show diligence.  It proved a lack of diligence.

35.   The identity of the alleged server has never been revealed.

36.   Limitations continued to run during their lack of diligence in the four months from January 10, 2022 to May 10, 2022. "It is absolutely clear, however, that under Texas law, "the mere filing of a suit will not interrupt or toll the running of a statute of limitation; ... to interrupt the statute, the use of diligence in procuring the issuance and service of citation is required."" *Ellis v. Great SW Corp.*, 646 F.2d 1099, 1112 (5ᵗʰ Cir. 1981).

37.   Adding that delay to the previous total means that as of May 10, 2022, Wilmington was five years and eight months into the four year limitations period.

38.     As Wilmington has never complied with Rule 4 it has not taken any action to show diligence in getting the case served.

39.     The case should be dismissed with prejudice because limitations has expired.

### C.     The Plaintiff Lacks Standing

40.     Wilmington does not have standing to enforce the 2006 Home Equity Note between Home 123 Corporation as the Lender [Plaintiff's Exhibit 2, Doc. 1-1,3] and Leeroy Myers as the only Borrower. Plaintiff's Exhibit 2, Doc. 1-1,6. Its name is not on the Note and it has not shown it is entitled to enforce it.

41.     Without standing there can be no case or controversy between the parties and the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(6).

42.     The Plaintiff identified itself as Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not Individually but as Trustee For Pretium Mortgage Acquisition Trust ("Wilmington").  That entity, in that capacity, is the agent for the trust that must prove it owns the Note that Wilmington is trying to enforce for its benefit.

43.     Proving standing is Wilmington's burden. "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has

suffered "some threatened or actual injury resulting from the putatively illegal action . . . ." *Warth v. Seldin*, 422, U.S. 490, 499 (1975).

44. "A district court's obligation to consider a challenge to its jurisdiction is non-discretionary. When the defendant "challenge[s] the jurisdiction of the district court in an appropriate manner," that court has a "duty of making further inquiry as to its own jurisdiction."" *In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019).

45. Wilmington lacks standing because the Note was never assigned to the Trust it represents. It has not shown it suffered a particularized and concrete injury. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete."" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016).

46. The Assumed Name Certificate in Plaintiff's Exhibit 4 says that Home 123 Corporation was an assumed name used by New Century Mortgage Corporation ("New Century"). Doc. 1-1, 29.

47. Paragraphs 2 through 15 in the Complaint refer to a series of conflicting and defective documents that show a convoluted series of alleged assignments that begins with the April 17, 2008, Assignment of Deed of Trust from New Century Mortgage Corporation to Mortgage Electronic Registration Systems

Inc. ("MERS"). It conveyed only rights in the Deed of Trust. Plaintiff's Exhibit 5, Doc. 1-1, 31.  It conveyed no rights in the Note.

48.   Without an assignment of the Note to MERS no alleged assignment that MERS made of the Note has any value.

49.   The November 2, 2009, Assignment of Note and Deed of Trust by MERS to Litton Loan Servicing, LP ("Litton") was allegedly retroactively effective to September 22, 2009. Plaintiff's Exhibit 7, Doc. 1-1, 37.

50.   There was a break in the chain of title for the Note because it was never assigned by New Century. MERS could not assign what it did not own.

51.   Plaintiff's Exhibit 7 was replaced by the June 21, 2011, Assignment of Deed of Trust, allegedly retroactively effective as of November 2, 2009. Plaintiff's Exhibit 8, Doc.1-1, 40. In it MERS assigned only the Deed of Trust to Litton. It called itself "This Corrective Assignment of Deed of Trust."

52.   Seven years later that mistake too was replaced by the October 24, 2018, Corrective Assignment of Deed of Trust from MERS to Litton.  Plaintiff's Exhibit 9, Doc. 1-1, 42.  It did not contain an effective date. It said it included "certain note(s) described therein" but there was still never an assignment of the Note from the original, Lender Home 123 Corporation / New Century, to MERS.  Again, MERS could not have assigned what it did not own; not in

2008 and not in 2018.

53. Plaintiff's Exhibit 10 is the January 26, 2011, alleged Assignment of Deed of Trust from Litton to Green Tree Servicing, LLC. Doc. 1-1,45.   It was signed six months before Exhibit 7, the alleged assignment from MERS to Litton, was signed on June 21, 2011.

54. Plaintiff's Exhibit 11 is the alleged September 19, 2018, Assignment of Deed of Trust from Ditech, formerly known as Green Tree, to Wilmington.  It says that it includes "the certain note(s) described therein." Doc. 1-1, 48.  That was still not possible because of the lack of assignment of the Note from New Century to MERS.

55. The case should be dismissed because the Plaintiff has not shown that it has standing.

## II.   INSUFFICIENT PROCESS AND INSUFFICIENT SERVICE OF PROCESS

56. All cases are subject to Fed. R. Civ. P. 1. Scope and Purpose. "These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

57.   The process was deficient because the case had been on file for more than 90 days when service under Rule 5 was accomplished and the summons was more than 90 days old when it was allegedly served. Fed. R. Civ. P.  4(m) and 12(b)(4).

58.   Service of process was deficient under Fed. R. Civ. P. 12(b)(5) because the summons was never served under Rule 4.

59.   The Defendants' motion under Rule 4(m) is reurged and included by reference. Doc. 17. It showed how the Plaintiff had failed to meet the 90 day service deadline.

60.   It also showed that the court set five status conferences instead of dismissing the case without prejudice or setting a deadline for Wilmington to get the Complaint served as required by the rule.

61.   The motion also showed the Plaintiff's certification that it was claiming service of the summons had been made under Rule 5. Serving and Filing Pleadings and Other Papers instead of Rule 4. Summons.

62.   Since it was filed the Court set a sixth status conference, contrary to the provisions of Rule 4(m).

63.   The July 29, 2022, minutes entry says that the motion was denied but there is no signed order and Wilmington never filed a response.

64.    The appearance by the Myers at that July 29, 2022, status conference was under protest because at the July 12, 2022, conference, attended only by Wilmington, the Court gave Wilmington a deadline to file a summary judgment when it had admittedly not complied with Rule 4. The Myers appearance under such circumstances could not confer jurisdiction on the Court over the violations of Rule 4 or excuse Wilmington's lack of diligence described above.

## PRAYER

Mr. and Mrs. Myers pray that the case be dismissed and that they be granted any other relief to which they are entitled, at law or in equity.

Respectfully submitted,

/s/ Ira D. Joffe
Ira D. Joffe
State Bar No. 10669900
Attorney for Defendants
6750 West Loop South
Suite 920
Bellaire, TX 77401
(713) 661-9898
(888) 335-1060 Fax
ira.joffe@gmail.com