# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST,** | § § § § § § | |
| **Plaintiff** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 22-88** |
| **LEEROY M. MYERS and BARBARA MYERS,** | § § § | |
| **Defendants** | § § | |

## DEFENDANTS' ORIGINAL ANSWER AND COUNTERCLAIMS

TABLE OF CONTENTS

DEFENDANTS' ORIGINAL ANSWER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   AFFIRMATIVE DEFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.   The Second Expiration of the Statute of Limitations . . . . . . . . . . . . 9
    B.   The Intentional Withdrawal of the 2009 Acceleration Established the Defense of Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    C.   The Plaintiff Has Not Proven That it Has Standing . . . . . . . . . . . . . 16
    D.   Deprivation of Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II.   COUNTERCLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    A.   Offset for the Value of the Repairs after Hurricane Harvey . . . . . . . 20
    B.   Bad Faith Failure to Settle for Twelve Years . . . . . . . . . . . . . . . . . . 21
    C.   Chapter 392 Texas Finance Code Violation . . . . . . . . . . . . . . . . . . . 21

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Leeroy M. Myers and Barbara Myers respond to the Complaint as follows.

1.     Defendants are unable admit the allegation in Paragraph 1 that the Plaintiff is the mortgagee. The chain of title ignores the problem that on March 19, 2008, the New Century entities filed a Notice of Rejection of Executory Contract in their Chapter 11 Bankruptcy. *In re: New Century TRS Holdings, Inc., a Delaware corporation, et al.* Case No. 07-10416, District of Delaware, Doc. 5408.  It rejected its contracts with MERS. A copy is attached as Defendants' Exhibit 3 so that the Court can take judicial notice. The April 17, 2008 alleged assignment to MERS came after that. Plaintiff's Exhibit 5. Doc. 1-1, 31. There is also a November 12, 2009, alleged assignment from MERS in Plaintiff's Exhibit 7 [Doc. 1-1,37] in the chain of title but no proof of a contract showing it was able to make the alleged transfer after the documented rejection. Further, the phrase "may be contracted the undersigned attorney" in Paragraph 1 makes a response to that allegation impossible.

2.     Defendants are unable to admit or deny the allegation in Paragraph 2 that they are both the mortgagors under the Deed of Trust. That instrument identifies

them as "Borrower" but Barbara Myers did not borrow any money under the Note. Admit that they have both pledged the property as security for the debt based on the Note that only Mr. Myers signed.

3.  Defendants admit the allegation in Paragraph 3 identifying the property. However, headline of **<u>PARTIES</u>** above that paragraph is confusing and reemphasizes Plaintiff's lack of attention to detail.

4.  Defendants admit the allegation in Paragraph 4 concerning diversity if it can be shown that Wilmington is a proper plaintiff.

5.  Defendants admit the allegation in Paragraph 5 concerning citizenship for diversity if it can be shown that Wilmington is a proper plaintiff.

6.  Defendants admit the allegation in Paragraph 6 that they reside in Texas.

7.  Defendants admit the allegation in Paragraph 7 concerning value is the Harris County Appraisal District's value for 2021. They deny the amount allegedly owed.

8.  Defendants admit the allegation in Paragraph 8 concerning venue for issues concerning title to the property.

9.  Defendants admit the allegation in Paragraph 9 concerning Mr. Myers' acquisition of the property in 1985.

10. Defendants deny the allegation in Paragraph 10 that they both executed the

Note.  Mr. Myers was the only actual borrower.  The claim that Mrs. Myers signed the note is contrary to what is on the Plaintiff's Exhibit 2. Doc. 1-1,6. It is a misrepresentation of the status of a consumer debt in a judicial proceeding in violation of Tex. Fin. Code §392.304(a)(8).  There is also confusion because the definition of "Borrower" on Page 1 of the Deed of Trust includes Barbara Myers and the definition of "(E) "Note"" on Page 2 says that Borrower owes Lender fifty thousand dollars, when the Plaintiff's documents show that she never owed anything. Plaintiff's Exhibit 3, Doc 1-1, 7-8. They admit the rest of the allegations in Paragraph 10 that Home 123 Corporation was the lender and beneficiary of the recorded documents.

11.     Defendants admit the allegations in Paragraph 11 concerning assumed names.

12.     Defendants admit the allegations in Paragraph 12 concerning the assignments being executed and recorded but that is not proof they were valid and properly done. *See* Paragraph 1 *supra* concerning the New Century Bankruptcy and the Order rejecting its contract with MERS. In Paragraph 13 the Plaintiff admits that not all of its documents were correct and that it had to file a correcting document correcting a prior correction.  The first Assignment of Deed of Trust document does not say anything about assigning the Note.  The re-recording of a defective document did not cure its deficiencies.

*WILMINGTON SAVINGS v. MYERS* – Defendants' Original Answer - Page 4

13.     Defendants admit the allegations in Paragraph 13 concerning the assignments being executed and recorded but that is not proof they were valid and properly done. This paragraph admits there had to be a correcting document because a previous correcting document was incorrect.  There was no basis for MERS to assign the Note because it was never assigned to MERS because of the contract rejection in the New Century bankruptcy.  *See* Paragraph 1 *supra* concerning the New Century Bankruptcy and the Order rejecting its contract with MERS.

14.     Defendants admit the allegations in Paragraph 14 concerning the assignments being executed and recorded but that is not proof they were valid and properly done. In Paragraph 13 the Plaintiff admits that not all of its documents were correct and that it had to file a correcting document. There is no mention of assignment of the Note in the document.

15.     Defendants admit the allegations in Paragraph 15 concerning the assignments being executed and recorded but has that is not proof they were valid and properly done. In Paragraph 13 the Plaintiff admits that not all of its documents were correct and that it had to file a correcting document to correct a previous correction. There was no basis for Ditech/Green Tree to assign the Note it had never been assigned.

16.     Defendants admit the allegations in Paragraph 16 that the loan is thirteen (13)

years past due. This is evidence of waiver by the Plaintiff. They admit the January 29, 2021, demand was sent to Leeroy Myers but deny it was sent to Barbara Myers. The letter is not meaningful because of all the previous accelerations and litigation.

17.    Defendants admit the allegations in Paragraph 17 that filing the case was an acceleration, but it was technical and superfluous. The loan was first accelerated in 2009, in 2010, in 2015 and again in 2019. It was not de-accelerated after either the 2015 or 2019 accelerations. It is an admission that the October 30, 2015 filing of Cause No. 2015-65145 in the 151st Judicial District, Harris County, Texas, by Green Tree, its predecessor in interest, was an acceleration.

18.    Defendants admit the allegations in Paragraph 18 that Mr. Myers was in default. Mrs. Myers never had any obligation to pay. Limitations has expired on the debt and contract claims and they have been waived.

19.    Defendants deny  the allegations in Paragraph 19 that Wilmington has been individually injured by their default.  Wilmington has not proven it has standing to enforce the Note or that it is entitled to keep payments. It is admittedly acting As Trustee For Pretium Mortgage Acquisition Trust and does not own the Note itself.  Where it claims the right to an equitable remedy it

must do equity itself.  The Note was first accelerated thirteen (13) years ago in 2009, then again in 2010, and again in 2015, and the right to foreclose has been waived through a pattern of intentional and knowing inaction.

20.     Defendants deny the allegations in Paragraph 20 that any amount is due and owing to Wilmington.  They have no way to calculate the amount alleged. They are also entitled to a credit for the restoration work they did after Hurricane Harvey when the then owner of the Note refused to communicate with them.  The $22,146.24 of interest claimed at $8.90 per day is roughly 6.8 years, which further emphasizes the Plaintiff's waiver of its rights.

21.     Defendants admit the allegations in Paragraph 21 state what Wilmington seeks but deny that it is entitled.

22.     Defendants deny the allegations in Paragraph 22 that Wilmington is "the current legal owner and holder of the Note and the mortgagee of the Deed of Trust" and has the right to enforce the Loan Documents. Regardless, limitations has expired and waiver has attached. There is no need to cure defaults going back to 2009.

23.     Defendants admit the allegations in Paragraph 23 that Wilmington is seeking the right to foreclose.

24.     Defendants deny the unqualified allegations in Paragraph 24 that Wilmington

is entitled to recover attorney fees because it retained counsel. It would have to first prove standing and then prevail.  It has already shown it is not entitled to fees under statute because limitations expired. It is not entitled under equity, having intentionally waived its alleged rights for so long.

## I.   AFFIRMATIVE DEFENSES

The Defendants assert the affirmative defense of limitations.  The 2022 Complaint was filed thirteen (13) years after the cause of action first accrued in 2009. Limitations is only four years. Tex. Civ. Prac. & Rem. Code §16.035.

The Defendants assert the affirmative defense of waiver.  The record shows an intentional written waiver in August 2013 that abandoned the right to foreclose that was intentionally acquired in October 2009.

The Defendants assert the affirmative defense that the Plaintiff lacks standing. The original 2008 assignment of the Deed of Trust from Home 123 Corporation, the lender, to MERS was void. Green Tree could not have acquired standing through it and could not have assigned anything to Plaintiff Wilmington in 2018.

The Defendants continue to assert that the record shows the Plaintiff did not take the steps required by the rules of civil procedure for the Court to obtain jurisdiction.

**A.      The Second Expiration of the Statute of Limitations**

25.     The cause of action to foreclose accrues when the loan is accelerated. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) ("*Holy Cross*").

26.     As described below, that first happened in 2009, but was waived. But for that knowing and intentional waiver, limitations would have first expired in 2013.

27.     The court can take judicial notice that on October 30, 2015, Green Tree Servicing, LLC filed an Application For An Expedited Order Under Rule 736 On a Home Equity Loan in Cause No. 201565145 in the 151st Judicial District, Harris County, Texas ("Second Expedited Application").  If the loan had not already been accelerated, and limitations had not already expired, then  just filing the Application would have been an acceleration as a matter of law.

28.      "[N]otice of filing an expedited application for foreclosure after the requisite notice of intent to accelerate is sufficient to constitute notice of acceleration." *Burney v. Citigroup Glob. Mkts. Realty Corp.*, 244 S.W.3d 900, 904 (Tex. App. - Dallas, 2008, no pet.)("*Burney*").

29.     The actual acceleration was earlier. Paragraph 5.G. says "Before this application was filed, any other action required to initiate a foreclosure proceeding by Texas law or the loan agreement, contract, or lien sought to be

foreclosed was performed." That means an acceleration letter was intentionally sent before the case was filed.

30.     Exhibit D in support of the Second Expedited Application was a January 13, 2015, default letter from Green Tree to Mr. Myers. It included "**Your default consists of: <u>Failure to submit your monthly payments due 07/01/2009 through 01/01/2015.</u>**" Emphasis in the original.  Defendants' Exhibit 4.

31.     The sixth paragraph began "If you fail to cure the default within 30 days from the date of this notice, the maturity of this loan is accelerated and full payment of all amounts due under the loan agreement is required without further notice from us." *Id.*

32.     The cure was not made. The acceleration date was therefore February 12, 2015, and limitations based on that acceleration expired four years later on February 12, 2019. Tex. Civ. Prac. & Rem. Code §16.035(a).[1]

---

[1]Sec. 16.035.  LIEN ON REAL PROPERTY.

(a)  A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.

(b)  A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

(c)  The running of the statute of limitations is not suspended against a bona fide

33.   The current case was not filed until January 10, 2022. Doc. 1.  That was some

six years and eleven months after accrual of the cause of action.  It was roughly

two years and eleven months after limitations expired.

34.   Paragraph 16 in the Complaint shows the Plaintiff is still complaining that "the

Loan is currently due for the July 1, 2009 payment."

35.   The Plaintiff has not detailed any possible tolling. The case should be

dismissed because limitations expired as a matter of law.

---

purchaser for value, a lienholder, or a lessee who has no notice or knowledge of
the suspension of the limitations period and who acquires an interest in the
property when a cause of action on an outstanding real property lien has accrued
for more than four years, except as provided by:

(1)  Section 16.062, providing for suspension in the event of death;  or

(2)  Section 16.036, providing for recorded extensions of real property liens.

(d)  On the expiration of the four-year limitations period, the real property lien and
a power of sale to enforce the real property lien become void.

(e)  If a series of notes or obligations or a note or obligation payable in
installments is secured by a real property lien, the four-year limitations period does
not begin to run until the maturity date of the last note, obligation, or installment.

(f)  The limitations period under this section is not affected by Section 3.118,
Business & Commerce Code.

**B.    The Intentional Withdrawal of the 2009 Acceleration Established the Defense of Waiver**

36.    The August 19, 2013, letter on behalf of Green Tree Servicing, LLC said that it rescinded "the notice of acceleration dated October 5, 2009 and all prior notices of acceleration." The court can take judicial notice that it was submitted on April 17, 2017, as part of their Exhibit F-1 in, Doc. 23-6, in Civil Action 4:16-cv-1053. Another copy is attached as Defendants' Exhibit 2.

37.    Without the rescission notice the limitations period would have expired six weeks later on October 5, 2013.  Tex. Civ. Prac. & Rem. Code §16.035.

38.    It was only because of that letter that they were able to file the Second Expedited Application on October 30, 2015.

39.    Even without that letter, the court can take judicial notice that under *Burne*y the note was accelerated no later than June 11, 2010, when the Verified Tex. Rule Civ. P. 736 Application For Home Equity Foreclosure Order by Litton Loan Servicing, LP was filed in Cause No. 2010-36072 in the 129th Judicial District, Harris County, Texas ("First Expedited Application").

40.    That alleged 2013 rescission was not made under Tex. Civ. Prac. & Rem. Code §16.038, which only became effective on June 17, 2015.[2]

---

[2]Sec. 16.038.  RESCISSION OR WAIVER OF ACCELERATED MATURITY DATE. Added by Acts 2015, 84th Leg., R.S., Ch. 759 (H.B. 2067), Sec. 1, eff. June 17, 2015.

41.   That 2013 letter did not claim to undo the acceleration as a matter of law that was caused by filing the Rule 736 Application on June 11, 2010. Nor could it. A unilateral action by a party does not overrule the court of appeals on a legal matter.

42.   Four years after the June 11, 2010 filing, was June 11, 2014, and notwithstanding the October 5, 2009, acceleration, that is when the limitations based on the acceleration by filing expired as a matter of law.

43.   There was a statutory way to extend the life of the lien. Tex. Civ. Prac. & Rem. Code §16.036. It required a written agreement between the parties and filing it in the property records. That was not done.

> Sec. 16.036. EXTENSION OF REAL PROPERTY LIEN.
> (a)   The party or parties primarily liable for a debt or obligation secured by a real property lien, as that term is defined in Section 16.035, may suspend the running of the four-year limitations period for real property liens through a written extension agreement as provided by this section.
>
> (b)   The limitations period is suspended and the lien remains in effect for four years after the extended maturity date of the debt or obligation if the extension agreement is:
>
> (1)   signed and acknowledged as provided by law for a deed conveying real property;  and
>
> (2)   filed for record in the county clerk's office of the county where the real property is located.

(c)   The parties may continue to extend the lien by entering, acknowledging, and recording additional extension agreements...

44.   "A party who sues to recover real property subject to a lien or who intends to foreclose on a lien encumbering real property must do so within four years of the date on which the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a). "The party or parties primarily liable for a debt or obligation secured by a real property lien" may suspend the statute of limitations on the lien by executing a written extension agreement. Id. § 16.036(a). The Code further requires that any such agreements are to be filed in the county clerk's office and "signed and acknowledged as provided by law for a deed conveying real property." Id. § 16.036(b)." *Wind Mountain Ranch, LLC v. City of Temple*, 333 S.W.3d 580, 581 (Tex. 2010).

45.   "Guided by the principle that the words the Legislature uses are the clearest guide to its intent, we begin our analysis with the statute's plain language. When the words of the statute are clear and unambiguous we interpret them according to their plain and common meaning. That the Civil Practice and Remedies Code requires an extension agreement to be recorded is not in dispute...The Code's requirements for recording an extension agreement are clear and unambiguous; we therefore decline to look beyond the statute's plain

language." *Id. at 581-582, internal citations omitted*.

46. This Court is required to follow Supreme Court of Texas precedent on issues of Texas law. "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

47. Whatever unilateral declarations the rescission letter contained in an effort to prolong limitations, it did not trump the statutory requirements in §§16.035 and 16.036 and binding precedent.

48. The rescission letter failed under the statute in two ways. It was not signed by Mr. Myers and it was not filed in the property records. It did not reset limitations for the accrued cause of action.

49. Wilmington and its predecessors have engaged in more than a decade of intentionally waiving the known right to foreclose. The time between the October 5, 2009, acceleration and the August 19, 2013, letter that intentionally rescinded that acceleration was three years and ten and a half months of waiver.

50. That rescission was made despite the fact that on August 3, 2010, Litton was awarded a Home Equity Foreclosure Order in the First Application. It was never used. Defendants' Exhibit 1.

51.   The 2013 rescission of acceleration letter was not based on payments being
      received, but just to try to extend limitations. Regardless, it is undeniable
      evidence that the right to foreclose was intentionally waived. "The elements of
      waiver include (1) an existing right, benefit, or advantage held by a party; (2)
      the party's actual or constructive knowledge of its existence; and (3) the
      party's actual intent to relinquish the right or intentional conduct inconsistent
      with the right." *Perry Homes v. Cull*, 258 S.W.3d 580, 602-603 (Tex. 2008).

52.   The rescission letter met all three prongs of that test.

53.   From the February 12, 2015 acceleration to when the Second Expedited
      Application was filed on October 30, 2015, was another eight and a half
      months of inaction beyond what had intentionally not been done since 2009.

54.   The right has been waived and the case should be dismissed.

**C.   The Plaintiff Has Not Proven That it Has Standing**

55.   The original lender was Home 123 Corporation, an assumed name of New
      Century Mortgage Corporation ("New Century"). Plaintiff's Exhibit 4, Doc. 1-
      1, 29.

56.   Plaintiff Wilmington is not the original lender.  Its name is not on the March
      27, 2006, Texas Home Equity Note or on the Deed of Trust. Plaintiff's Exhibit
      2 and 3. Doc. 1-1, 3-28.

57.   To help clarify the convoluted, conflicting, corrected, and re-corrected assignments since 2008 they are set out in chronological order in the table attached as Defendants' Exhibit 5.

58.   Wilmington's alleged standing depends on the April 17, 2008 Assignment of Deed of Trust made by New Century to Mortgage Electronic Registration Systems ("MERS"). Plaintiff's Exhibit 5. Doc. 1-1, 31. MERS is the entity that Wilmington's rights rely on.

59.   The April 17, 2008 assignment to MERS conveyed only rights in the Deed of Trust. *Id*. It conveyed no rights in the Note. It had no right to convey anything.

60.   The problem is that on March 19, 2008, the New Century entities filed a Notice of Rejection of Executory Contract in their consolidated Chapter 11 Bankruptcy. *In re: New Century TRS Holdings, Inc., a Delaware corporation, et al.* Case No. 07-10416, District of Delaware, Doc. 5408. It specifically rejected its contract with MERS. A copy was attached[3] as Defendants' Exhibit 3 in support of Defendants' Reply to Plaintiff's Response to Defendants' Rule 12 Motions so the Court could take judicial notice. Doc. 24-3.

61.   It was effective ten days after service. All the alleged assignments from New

---

[3]All previous filings are incorporated by notice.

Century to MERS are after that date. They are void because there was no contract allowing the corporation or the bankruptcy estate to make them.

62.   There has never been proof of a valid contractual relationship between New Century and MERS for the loan in question after New Century got a court order allowing it to reject the contract that might have applied.

63.   Plaintiff Wilmington claims through the September 18, 2018, assignment from Ditech Financial LLC fka Green Tree Servicing LLC.  Plaintiff's Exhibit 11. Doc. 1-1, 48.

64.   Green Tree allegedly had a January 26, 2011, assignment from Litton. Plaintiff's Exhibit 10. Doc. 1-1, 45.

65.   MERS allegedly made a September 22, 2009, assignment to Litton.  Plaintiff's Exhibit 7.  Doc. 1-1, 37.

66.   But, as shown above, the alleged assignment from New Century to MERS was void.  MERS could not have assigned anything to Litton, which could not have assigned anything to Green Tree / Ditech, which could not have assigned anything to Wilmington.

67.   Wilmington has no standing and the case should be dismissed. The "lack of standing can be raised at any time by a party or by the court. United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370, 1374 (5th Cir.1986),

cert. denied." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989).

**D.**    **Deprivation of Due Process**

68.    The Minutes Entry for the January 27, 2012, hearing on the Defendants' Rule 12 Motions incorrectly says the ruling was on Doc. 12 when it was on Doc. 22. It also says the Motions were denied for the reasons stated on the record. There is no written order and the reasons were not stated.

69.    This section is not to re-litigate the issues previously raised but to put them in context with the rest of the Answer.

70.    The case was filed on January 10, 2022.  The July 8, 2022 declaration by Plaintiff's counsel says that the Defendants were allegedly served "pursuant to Rule 5(b)(2)(C) on May 10, 2022" when "notice of summons and complaint was sent via first-class mail on May 10, 2022." Doc. 17, ¶¶ 4,5. That is an inapplicable rule.

71.    The date was also after the 90 day deadline in Rule 4(m).

72.    There was never service under Rule 4, the rule that governs service of the summons and complaint.

73.    The July 12, 2022, Minute Entry, made at a time when there was demonstrably no service on the Defendants under Rule 4, six months after the filing date,

said "Plaintiff shall have thirty (30) days to file a Motion for Summary Judgment."

74.   Defendants felt compelled to appear under protest based on that entry and not because the Plaintiff had properly invoked the Court's jurisdiction.

## II.   COUNTERCLAIMS

**A.   Offset for the Value of the Repairs after Hurricane Harvey**

75.   The Court has jurisdiction over the Defendants' counterclaims under 28 U.S.C. §1367.

76.   The house was severely damaged by Hurricane Harvey in 2017. There was no flood insurance.  Numerous letters were sent to previous counsel to try to settle so that the Myers could repair the property. The fourth on October 20, 2017, included a request "so this can be turned into a performing loan instead of becoming a property in need of demolition." Defendants' Exhibit 6. There was never a response from prior counsel or any servicer of the loan.

77.   In order to prevent waste the Myers fixed the property rather than abandoning it and exposing it to the possibility of being be torn down. Should the Plaintiff be given the right to foreclose the Myers are entitled to reimbursement for the value of the work that was done to preserve the asset and allow its value to increase.

**B.      Bad Faith Failure to Settle for Twelve Years**

78.     The first request to attempt a settlement was sent six years earlier on March 31,

        2011. Defendants' Exhibit 7.

79.     Four months later, in July 2011, the loan servicer placed two notices on the

        property falsely claiming it had been abandoned and threatening to lock and

        winterize it.  Defendants' Exhibit 8.

80.     Since then they filed the Second Application in 2015. They filed the Third

        Application, Cause No. 2019-83092 in the 127th Judicial District, in 2019, and

        abandoned it in January 2021, and finally filed this case in 2022.

81.     The October 20, 2017 settlement letter, after the first case in federal court, also

        went unanswered. Defendants' Exhibit 6.

82.     The property is only about 1,250 square feet in Pasadena. It was flooded by

        Hurricane Harvey.  The 2006 loan was only for $50,000.00. Filing three

        separate Applications to foreclose, removing to cases to federal court, and

        filing this case while not being willing to settle is abusive. It shows no good

        faith.

**C.      Chapter 392 Texas Finance Code Violation**

83.     Under Tex. Fin. Code §392.001 Mrs. Myers is a consumer with a consumer

        debt and Wilmington is a debt collector engaged in debt collection on behalf

of a creditor.

84.    The false allegation in Paragraph 10 the Complaint that she executed the Note, and impliedly was responsible for paying it, was a misrepresentation of the status of a consumer debt in a judicial proceeding in violation of Tex. Fin. Code §392.304(a)(8).

85.    She is entitled to recover actual damages and reasonable attorney fees. Tex. Fin. Code §392.043.

## PRAYER

Mr. and Mrs. Myers pray that the case be dismissed and that they be granted any other relief to which they are entitled, at law or in equity.

Respectfully submitted,

 /s/ Ira D. Joffe
Ira D. Joffe
State Bar No. 10669900
Attorney for Defendants
6750 West Loop South
Suite 920
Bellaire, TX 77401
(713) 661-9898
(888) 335-1060 Fax
ira.joffe@gmail.com