# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **WILMINGTON SAVINGS FUND** | § | |
| **SOCIETY, FSB, D/B/A CHRISTIANA** | § | |
| **TRUST, NOT INDIVIDUALLY BUT** | § | |
| **AS TRUSTEE FOR PRETIUM** | § | |
| **MORTGAGE ACQUISITION TRUST,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 22-88** |
| | § | |
| **LEEROY M. MYERS and** | § | |
| **BARBARA MYERS,** | § | |
| | § | |
| **Defendants** | § | |

## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 28]

TABLE OF CONTENTS

THE CRITICAL MISSING HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    The Affidavit Fails Because it Was Not Properly Notarized and it Contains False Testimony That Contradicts its Exhibits . . . . . . . . . 2

    II.    The Motion Thoroughly Documents How the Claim Against the Myers Has Been Repeatedly and Methodically Waived for Almost Twelve Years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    III.    The Motion Admits That the Cause of Action Accrued as early as 2010 and no later than 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    IV.    The Extension of Limitations on Enforcing Loans Secured by Real Property Is Governed by Tex. Civ. Prac. & Rem. Code §16.036, Not the Whim of the Lender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.     The Claims for Delinquent Interest Conflict with Each Other and the Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.    The Motion Does Not Prove That the Plaintiff Has Standing . . . . . 19

UNRESOLVED ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.     Offset for the Value of the Repairs after Hurricane Harvey and Failure to Settle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.    Chapter 392 Texas Finance Code Violation . . . . . . . . . . . . . . . . . . 22

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## THE CRITICAL MISSING HISTORY

The reason that the Myers were declared in default in 2009 was because of servicing errors by Saxon Mortgage Services and Litton Loan Servicing.  Before that they had paid all the required payments. The confusion came from continuing to pay Saxon after Litton apparently became the servicer in 2008.  There is no evidence of the timely "welcome letter" and "goodbye letter" to provide notice of where to pay as required by Regulation X for the Real Estate Settlement Procedures Act ("RESPA"). 12 CFR §1024.33(b)(3).

Neither is there evidence that Saxon sent the payments to Litton after the servicing change in time to meet the deadline in 12 CFR §1024.33(b)(4).  The Court can take judicial notice of the pro se answer that the Myers filed in 2010 Application For Expedited Foreclosure.  Defendants' Exhibit 7. The frustration in it is palpable.

The miscommunication caused Litton to impose the needless requirement for an escrow account and begin to pay taxes on the property.  A servicer earns interest on money it holds in escrow.

That should have stopped.  Exhibit A from the pro se Answer shows that Mr. Myers reimbursed Litton for tax it paid;  Exhibit B is his request that they stop the escrow he never requested. Defendants' Exhibit 7, 3-5.

As set out in the pro se answer they made multiple payments in the normal

amount as before but they were refused.  Had Litton and Saxon serviced the loan

properly, and accepted payments, then none of the cases would have been required.

The February 22, 2011 letter from counsel shows the Myers tried to avoid

litigation. Defendants' Exhibit 8. The request was ignored. That was eleven years and

multiple cases ago.

## SUMMARY OF THE ARGUMENT

The Plaintiff's Motion For Summary Judgment ("Motion") [Doc. 28] fails for

many reasons.  It cannot meet the standard in Fed. R. Civ. P. 56 because (1) the

affidavit is defective, (2) the Plaintiff has waived its cause of action under Texas law,

(3) limitations expired and was not revived, (4) it fails to account for the value of the

offset the Myers are entitled to for rehabilitating the property after Hurricane Harvey

(5) it fails to address the counterclaim, and (6) the Plaintiff has failed to prove it has

standing.

## ARGUMENT

**I.    The Affidavit Fails Because it Was Not Properly Notarized and it Contains False Testimony That Contradicts its Exhibits**

The Motion depends on the testimony in the December 19, 2022, Business

Records Affidavit of Korey McGovern, a Document Execution Specialist for Selene

Finance. Doc. 28-1. That person has not been identified as either a witness or an

expert witness.

The signature on the document was allegedly notarized by a Florida notary public, but the jurat fails to meet the requirements[1] in Title X, Chapter 117, Section 117.05(4) of the Florida statutes. It is not "in substantially the same form as those found in subsection (13)." It does not list a county, as required by (a), or state if the appearance was in person or electronically, as required by (c), or show "the specific type of identification" presented, as required by (f).

Neither is the document supported by an unsworn declaration made under 28 U.S.C. §1746.

It is inadmissible as a notarized affidavit.

It does not "set out facts that would be admissible in evidence" as required by Fed. R. Civ. P. 56(c)(4).

---

[1]117.05 Use of notary commission; unlawful use; notary fee; seal; duties; employer liability; name change; advertising; photocopies; penalties.—

(4) When notarizing a signature, a notary public shall complete a jurat or notarial certificate in substantially the same form as those found in subsection (13). The jurat or certificate of acknowledgment shall contain the following elements:

(a) The venue stating the location of the notary public at the time of the notarization in the format, "State of Florida, County of    ."

(c) Whether the signer personally appeared before the notary public at the time of the notarization by physical presence or by means of audio-video communication technology as authorized under part II of this chapter.

(f) The specific type of identification the notary public is relying upon in identifying the signer, either based on personal knowledge or satisfactory evidence specified in subsection (5).

Even if properly notarized it contains defects that undermine its credibility. It is a business records affidavit, not a witness's affidavit. Yet Paragraph 5 of the inadmissible testimony says "On or about June 10, 1985, Borrowers obtained title to the property..." and cites to the Warranty Deed in Exhibit 1-1. Doc 28-2.   The testimony interpreting the effect of the document, instead of just providing its description and saying it is an accurate copy of the original, is inadmissible because the affiant is not a fact witness and was never subject to cross-examination. It is false because it contradicts the contents of the deed from the Veterans Administration, the affiant's alleged source of personal knowledge, that clearly shows it was only to Mr. Myers. *Id*.  His wife's name is not on the deed.

Paragraph 6 says "On or about March 27, 2006, Borrowers executed a Texas Home Equity Note..." and cites to Plaintiff's Exhibit 1-2. Doc. 28-3. That is also clearly false testimony from the non-witness because only Mr. Myers signed the Note. Doc. 28-3, 4.  Again, his testimony contradicted the alleged source of his personal knowledge.

At best, these are two misrepresentations that should not have been made by the witness. They should not have been approved and filed by counsel.

False testimony, even if notarized, cannot support any relief for the party relying on it.

Page 6 of 7 of the Affidavit is completely blank with no explanation. It is followed with a page containing only the affiant's signature and the defective notarization.

"An affidavit that does not measure up to the standards of" Rule 56 "is subject to a timely motion to strike. In the absence of this motion or other objection, formal defects in the affidavit ordinarily are waived." Auto Drive-Away Co. of Hialeah v. Interstate Commerce Comm'n, 360 F.2d 446, 448-49 (5th Cir. 1966); see also Munoz v. Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators, 563 F.2d 205, 214 (5th Cir. 1977) ("Inadmissible material that is considered by a district court without challenge may support a summary judgment." *Reeves v. Wells Fargo Home Mortgage*, No. 12-50815, November 8, 2013 (5th Cir.).

This is that objection. The Affidavit should be stricken. Its inadmissible false testimony cannot support summary judgment for the Plaintiff.

## II.     The Motion Thoroughly Documents How the Claim Against the Myers Has Been Repeatedly and Methodically Waived for Almost Twelve Years

The Court is required to follow Supreme Court of Texas precedent on issues of Texas law. "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court

in a decision is not a matter of federal concern. " *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

The relevant Texas law on waiver is that "[t]he elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual or constructive knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right." *Perry Homes v. Cull*, 258 S.W.3d 580, 602-603 (Tex. 2008).

The Motion's thorough documentation of (1) the intentional acquisition of the right to foreclose as early as 2010, (2) that Plaintiff and its predecessors knew they had the right, and (3) the multiple intentional choices to fail to use that right for more than a decade, met all three prongs of the test. It established the 2010 starting point of the chain of waiver events and that it stretched over the next eleven plus years.  As shown below, limitations  is only four years.

There is no authority that allows the unilateral waiver of its rights by a private party to extend limitations and grant itself an unending right when the applicable limitations period is proscribed by statute.  This is especially true where a statute is directly applicable to the right and it requires the participation of both parties. *See* the discussion of Tex. Civ. Prac. & Rem. Code §16.036 below.

If an individual personal injury Plaintiff issued a similar document unilaterally

extending its right to sue while it considered seeking medical assistance, it would be laughed out of court. Wilmington has no greater right.

In its history of the "First Rule 736 Application for Expedited Foreclosure" the Motion confirmed that Wilmington's predecessor "Litton had mailed a notice of acceleration to Leeroy Myers on October 5, 2009 and obtained an order for non-judicial foreclosure in 2010 in an expedited foreclosure proceeding." Doc. 28, 5.

The same paragraph included that "[a]fter obtaining the foreclosure order, Litton forewent foreclosure and assigned the Deed of Trust to Green Tree." *Id*. That January 26, 2011, transfer is shown in Plaintiff's Exhibit 1-7. Doc 28-8. It is the first document showing a holder of the right to foreclose had waived it.

The Court can take judicial notice that the Order was signed on September 27, 2010. A copy is attached as Defendants' Exhibit 1. It was originally filed[2] in support of the Defendants' Original Answer. Doc. 31-1.

That admission by counsel, that Litton, Plaintiff's predecessor in interest, chose to intentionally begin waiving the known right to foreclose in 2010 is binding on Plaintiff. Fed. R. Evid. 801(d).

So is the statement in Paragraph 16 of the Complaint that says "[t]he Loan is currently due for the July 1, 2009 payment." Doc. 1, 5. That payment was due twelve

---

[2] All previous filings are included by reference.

years and six months before the Complaint was filed on January 10, 2022.

In its history of the "Second Rule 736 Application for Expedited Foreclosure" on Page 6, the Motion refers to the second document that proves the claim against the Myers has been waived. It cites to the finding in the summary judgment in Case No. 16-cv-01054 where "[t]he court found that the record had established that Ditech had effectively and timely rescinded the First 2009 Acceleration by several acts, including its August 19, 2013 notice and its acceptance of payments in September 2013. *Id*. at 6." The assignment, the rescission letter described below, and the payment acceptance were all three in writing and were submitted by the Plaintiff's predecessor in interest.

A copy of the August 19, 2013 rescission of acceleration letter was previously filed as Exhibit F-1 in the 2016 civil case and was filed here as Defendants' Exhibit 2 in support of the Defendants' Original Answer. Doc. 31-2, 6. The first seven pages are attached as Defendants' Exhibit 2. It is incorporated by reference. It included "This letter is formal notice of the following: Mortgagee under the Deed of trust referenced below hereby rescinds the notice of acceleration dated October 5, 2009 and all prior notices of acceleration. Mortgagee further agrees that Borrower may continue to pay the indebtedness due Mortgagee pursuant to the terms of the debt secured by the Deed of Trust." *Id*.

Without the last minute August 19, 2013 rescission notice, the cause of action that accrued, and the limitations period caused by that accrual, began with the October 5, 2009, acceleration, would have expired six weeks later on October 5, 2013.  Tex. Civ. Prac. & Rem. Code §16.035.

At the bottom of the very same Page 6 in the Motion, in the history of the "Third Rule 736 Application for Expedited Foreclosure" Wilmington admitted another written and intentional act of rescission -- "On January 7, 2021, Wilmington filed a notice of nonsuit and notice of rescission in the proceedings."  That was at least the fourth act of waiver, all of them in writing.

Waiver only has to be proven once to be an effective defense. It does not need to be proven four times, but the Plaintiff's own documents have done that, starting in 2011, eleven years before this case was filed.

The initial extent of the waiver was first described in the October 26, 2015, Affidavit In Support Of Petitioner's Application For an Expedited Order Under Rule736 by Brandon Schildts, Foreclosure Supervisor of Ditech Financial, LLC, FKA Green Tree Servicing LLC.  It was filed on October 30, 2015, in what the Motion refers to as the Second Application for Foreclosure. Doc. 28, 6.

Paragraph 7 includes " Based on the servicing records for Obligor's account, as of September 25, 2015: (i) 75 regular monthly payments have not been paid...(iii)

Notice to cure the default has been sent by certified mail to each Respondent who is obligated to pay the underlying debt or obligation. The opportunity to cure has expired."

That testimony is an admission that the loan's servicer knew the foreclosure claim had accrued by September 25, 2015. That was approaching seven years before this case was filed in 2022.

It also consistent with the sworn testimony in the November 8, 2019, Affidavit In Support Petitioner's Application For an Expedited Order Under Rule 736 by Korey A. Rudd, Team Lead Foreclosure, of Selene Finance that was filed on November 18, 2019 in Cause No. 2019-80392 in the 127th Judicial District, Harris County, Texas. The Motion refers to that as the Third Rule 736 Application for Expedited Foreclosure ("2019 Application"). Doc. 28, 6.

Paragraph 7 includes " Based on the servicing records for Obligor's account, as of 11/08/2019: (i) 125 regular monthly payments have not been paid...(iii) Notice to cure the default has been sent by certified mail to each Respondent who is obligated to pay the underlying debt or obligation. The opportunity to cure has expired."

Those missing 125 payments represent more than ten years of default at a time when the Plaintiff had the right to foreclose, knew it had the right, but repeatedly

waived it.

Rather than take the 2019 Application to a conclusion in a court that frequently handles such cases, it was voluntarily non-suited by Plaintiff's current counsel in yet another written declaration of waiver. "On January 7, 2021, Wilmington filed a notice of nonsuit and notice of rescission of acceleration in the proceedings." Doc.28, 6. Had they finished what was started in the Third Application for "Expedited" foreclosure then there would have been no need to file this case. They gamed the system to take their fourth shot in the current case.

The Payoff in Plaintiff's Exhibit 1-13 shows 158 missed payments starting on July 1, 2010 and ending on August 1, 2022. Doc. 28-14, 2.  That is over twelve years of missed payments.

After allowing twelve years of payments to be missed, and putting in writing at least four times, that it was refusing to use its remedy of foreclosure, and then arguing that waiver in the prior federal case, and using it as evidence here, it is impossible to make a finding that the right has not been waived.

No further legal action was taken after the Third Application until this case was filed a year later on January 10, 2022. That was an additional year of documented waiver, at a time when five more payments had been missed, a total of 163.

To put it into perspective, the Reinstatement Quote in Exhibit 1-13 [Doc. 28-

14] says there are missed payments in the amount of $112,518.76. It was impossible to owe that much in arrearage in four years and the payoff would be even more on top of that. The original principal balance in 2006 was only $50,000.

The Plaintiff's own documents provide more than enough evidence for the Court to find the claim has been waived. At a minimum those documents establish a genuine dispute as to an issue of material fact on the application of the defense of waiver that prevents issuance of summary judgment in favor of Wilmington. Fed. R. Civ. P. 56(a).

## III.   The Motion Admits That the Cause of Action Accrued as early as 2010 and no later than 2015

Wilmington relies on the same case that the Myers do for determining one of the ways in which the loan was accelerated as a matter of law. *"Plaintiff's action in filing of this lawsuit for judicial foreclosure specifically accelerates the entire debt and constitutes notice of acceleration. See Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 902-904 (Tex. App.—Dallas 2007, no pet.) (Unequivocal action taken by the mortgagee that indicates that the entire mortgage debt is due, such as filing suit to enforce the lien, is sufficient to serve as notice of acceleration)." Doc. 28, 9. It is one of the very few points of agreement between the parties.

Three pages earlier the Motion says "In (sic) October 30, 2015, Green Tree, now known as Ditech Financial, LLC ("Ditech") filed an expedited foreclosure

proceeding action ("Second Application for Foreclosure"), in the 151st Judicial District Court, Harris County, Texas, Case No. 2015-65145." Doc. 28, 6.

The clear application of *Burney* is that the filing of that Second Application was an acceleration that started the four year limitations period running no later than October 30, 2015.  The current case was not filed until January 10, 2022, roughly six years and three months later.

It was actually accelerated even earlier. Exhibit D in support of the Second Expedited Application was a January 13, 2015, default letter from Green Tree to Mr. Myers. It included "**Your default consists of: <u>Failure to submit your monthly payments due 07/01/2009 through 01/01/2015.</u>**" Emphasis in the original. Defendants' Exhibit 4.

The sixth paragraph began "If you fail to cure the default within 30 days from the date of this notice, the maturity of this loan is accelerated and full payment of all amounts due under the loan agreement is required without further notice from us." *Id.*

The cure was not made. The acceleration date that Ditech chose was therefore February 12, 2015. The Complaint was not filed until six years and eleven months later on January 10, 2022. Doc. 1.

The Motion is devoid of evidence of any possible equitable tolling, which is not automatic. "Equitable tolling is `a discretionary doctrine that turns on the facts

and circumstances of a particular case.'" Jackson v. Davis, 933 F.3d 408, 410 (5th Cir. 2019) (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)) It is reserved for "rare and exceptional circumstances." Ibid. (quoting Hardy v. Quarterman, 577 F.3d 596, 598 (5th Cir. 2009)). A petitioner must at least show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005))." *Williams v. Hopper*, No. 19-30523, April 26, 2022 (5th Cir.).

The documented pattern of intentional waiver here through multiple written instruments precludes a finding of diligence in exercising the known right to foreclose. As shown above, the Motion proves the reverse. It documents that the pattern is of diligence in refusing to exercise the known right.

Six years since accrual is more than the four year limitations period years in Tex. Civ. Prac. & Rem. Code §16.035. That applies to the contract limitations period in §16.004[3] as well. This raises a genuine issue of material fact on whether or not limitations has expired. That dispute prevents summary judgment in favor of the Plaintiff on both the foreclosure and the breach of contract claims. Fed. R. Civ P.

---

[3]Sec. 16.004. FOUR-YEAR LIMITATIONS PERIOD. (a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues: (3) debt

56(a). The Motion should be denied based on its own content.

This Court applied limitations as a defense when the pro se petitioner missed a deadline by just days. "When the Texas Court of Criminal Appeals denied habeas relief on February 14, 2014, petitioner had nineteen days remaining to file his federal habeas petition. However, petitioner did not file the instant petition until sixty-three days later, forty-four days beyond the limitations deadline... Respondent is entitled to summary judgment dismissal of petitioner's federal habeas petition as barred by limitations. *O'Veal v. Stephens*, No. H-14-1550 (S.D.Tex, Nov. 3, 2014)(Ellison, J.)

Their own documents show that the Plaintiff has intentionally let limitations expire for a period of years, not days. The case should be dismissed accordingly.

Based on the Plaintiff's evidence it would be appropriate for the Court to not only deny the Motion but to award summary judgment to the Defendants that Wilmington has had no enforceable claim since June 11, 2014.

## IV.    The Extension of Limitations on Enforcing Loans Secured by Real Property Is Governed by Tex. Civ. Prac. & Rem. Code §16.036, Not the Whim of the Lender

The Court can take judicial notice that under *Burne*y the note was accelerated no later than June 11, 2010, when the Verified Tex. Rule Civ. P. 736 Application For Home Equity Foreclosure Order by Litton Loan Servicing, LP was filed in Cause No. 2010-36072 in the 129th Judicial District, Harris County, Texas ("First Expedited

Application").

That alleged 2013 rescission could not have been made under Tex. Civ. Prac. & Rem. Code §16.038; it only became effective on June 17, 2015.[4]

That 2013 letter in Defendants' Exhibit 2 did not claim to undo the acceleration as a matter of law that was caused by filing the Rule 736 Application on June 11, 2010. Nor could it. A unilateral action by a party does not overrule the court of appeals in a legal matter.

Four years after the June 11, 2010 filing, was June 11, 2014, and notwithstanding the October 5, 2009, acceleration, that is when the limitations based on the acceleration by filing expired as a matter of law.

There was a statutory way to extend the life of the lien. Tex. Civ. Prac. & Rem. Code §16.036. It required a written agreement between the parties and filing it in the property records.  That was not done.

> Sec. 16.036.  EXTENSION OF REAL PROPERTY LIEN.
>
> (a)   The party or parties primarily liable for a debt or obligation secured by a real property lien, as that term is defined in Section 16.035, may suspend the running of the four-year limitations period for real property liens through a written extension agreement as provided by this section.

---

[4]Sec. 16.038.  RESCISSION OR WAIVER OF ACCELERATED MATURITY DATE. Added by Acts 2015, 84th Leg., R.S., Ch. 759 (H.B. 2067), Sec. 1, eff. June 17, 2015.

(b)    The limitations period is suspended and the lien remains in effect for four years after the extended maturity date of the debt or obligation if the extension agreement is:

(1)    signed and acknowledged as provided by law for a deed conveying real property; and

(2)    filed for record in the county clerk's office of the county where the real property is located.

(c)    The parties may continue to extend the lien by entering, acknowledging, and recording additional extension agreements...

"A party who sues to recover real property subject to a lien or who intends to foreclose on a lien encumbering real property must do so within four years of the date on which the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a). "The party or parties primarily liable for a debt or obligation secured by a real property lien" may suspend the statute of limitations on the lien by executing a written extension agreement. Id. § 16.036(a). The Code further requires that any such agreements are to be filed in the county clerk's office and "signed and acknowledged as provided by law for a deed conveying real property." Id. § 16.036(b)." *Wind Mountain Ranch, LLC v. City of Temple*, 333 S.W.3d 580, 581 (Tex. 2010).

"Guided by the principle that the words the Legislature uses are the clearest guide to its intent, we begin our analysis with the statute's plain language. When the words of the statute are clear and unambiguous we interpret them according to their

plain and common meaning. That the Civil Practice and Remedies Code requires an extension agreement to be recorded is not in dispute...The Code's requirements for recording an extension agreement are clear and unambiguous; we therefore decline to look beyond the statute's plain language." *Id. at 581-582, internal citations omitted*.

This Court is required to follow Supreme Court of Texas precedent on issues of Texas law. *Erie*. Whatever unilateral declarations the rescission letter contained in an effort to prolong limitations, it did not trump the statutory requirements in §§16.035 and 16.036 and binding precedent.

The rescission letter failed under the statute in two ways. It was not signed by Mr. Myers and it was not filed in the property records. It did not reset limitations.

The same standard applied to the filing of Cause No. 2015-85145, the Second Application on October 30, 2015. Limitations expired as a matter of law on four years later on October 30, 2019, and the instant case was not filed until January 10, 2022, more than six years after that previous filing date. Doc. 1.

The Motion does not meet the Rule 56 standard to show that the statute is inapplicable just because Wilmington wants to avoid its impact.

## V.    The Claims for Delinquent Interest Conflict with Each Other and the Evidence

The allegation in Paragraph 20 of the Complaint includes, "as of April 12, 2021... b. Interest: $22,146.24, and is accruing currently at the Note rate of 7.645% per annum and will continue to accrue at the rate of $8.90 per day."  Doc. 1, 6.

That conflicts with the Payoff Statement in Plaintiff's Exhibit 1-13. Doc. 28-14.  It shows "Delinquent Interest: 22,146.24" but on a "Good to Date" of "8/12/2022."  That is the exact same amount of delinquent interest, but sixteen months later. Both numbers cannot be correct.

Every entry in the "Interest Amt" column of the "Payment& Escrow Breakdown" on pages 2 through 5 of the exhibit is "0.00."  There is no evidence to substantiate the assertion of $22,146.24 in delinquent interest or how and when that amount was calculated or first accrued. It is an unsupported conclusory statement.

Again, the Plaintiff's own documents raise a genuine dispute as to an issue of material fact that prevents issuance of summary judgment in their favor.  Fed. R. Civ. P. 56(a).

## VI.   The Motion Does Not Prove That the Plaintiff Has Standing

Plaintiff was not the original lender. It extended no credit. Its Exhibits 1-5 through 1-11 detail the alleged assignments of the Deed of Trust since its inception. Paragraph 13 in the Complaint admitted that not all of them were correct.

For clarity the transactions have been set out in chronological order, including the two corrected documents, in Defendants' Exhibit 5. It was originally filed in

support of the Original Answer. Doc. 31-5.

That table includes, but the Motion fails to account for, the March 19, 2008, Notice of Rejection of Executory Contract that the New Century entities filed in their Chapter 11 Bankruptcy. *In re: New Century TRS Holdings, Inc., a Delaware corporation, et al.* Case No. 07-10416, District of Delaware, Doc. 5408.  It rejected its contracts with MERS.

A copy is attached as Defendants' Exhibit 3 so that the Court can take judicial notice. It was effective ten days later.  All the alleged assignments from New Century to MERS are after that date. The evidence from the bankruptcy case was not even acknowledged in the Motion.

The April 17, 2008 alleged assignment to MERS came after that. Plaintiff's Exhibit 1-5. Doc. 28-6.

They are void because there was no contract allowing the corporation or the bankruptcy estate to make them.

There has never been proof of a valid contractual relationship between New Century and MERS for the loan in question, let alone after New Century rejected the contract that did exist.

MERS could not have assigned anything to Litton, which could not have assigned anything to Green Tree / Ditech, which could not have assigned anything to

Wilmington.

Wilmington has no standing and the case should be dismissed. The "lack of standing can be raised at any time by a party or by the court. United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370, 1374 (5th Cir.1986), cert. denied." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989).

## UNRESOLVED ISSUES

The Motion does not deal with all the issues between the parties. Even if Wilmington has the right to foreclose, which it does not, its claim is subject to offsets for amount that are due to the Myers.

## I.    Offset for the Value of the Repairs after Hurricane Harvey and Failure to Settle

The house was severely damaged by Hurricane Harvey in 2017. There was no flood insurance. Numerous letters were sent to previous counsel to try to settle so that the Myers could repair the property. The fourth, on October 20, 2017, documented the failures to respond and included a request "so this can be turned into a performing loan instead of becoming a property in need of demolition." Defendants' Exhibit 6. There was never a response from that counsel or any servicer of the loan.

In order to prevent waste the Myers fixed the property rather than abandoning

it. Should the Plaintiff be given the right to foreclose the Myers are entitled to reimbursement for the value of the work that was done to preserve the asset and allow its value to increase.  The invoice provided by Mr. Myers for some of the repairs is attached as Defendants' Exhibit 9. More work was needed and done but the precise assessment is beyond the scope of the Motion.

## II.    Chapter 392 Texas Finance Code Violation

Under Tex. Fin. Code §392.001 Mrs. Myers is a consumer with a consumer debt and Wilmington is a debt collector engaged in debt collection on behalf of a creditor.

The false allegation in Paragraph 10 the Complaint that she executed the Note, and impliedly was responsible for paying it, was a misrepresentation of the status of a consumer debt in a judicial proceeding in violation of Tex. Fin. Code §392.304(a)(8).

She is entitled to recover actual damages and reasonable attorney fees as an additional offset against any potential liability to Wilmington. Tex. Fin. Code §392.043.

## PRAYER

Mr. and Mrs. Myers pray that the Motion be denied and that they be granted any other relief to which they are entitled, at law or in equity.

Respectfully submitted,

 /s/ Ira D. Joffe
Ira D. Joffe
State Bar No. 10669900
Attorney for Defendants
6750 West Loop South
Suite 920
Bellaire, TX 77401
(713) 661-9898
(888) 335-1060 Fax

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST,** | § § § § § § | |
| **Plaintiff** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 22-88** |
| **LEEROY M. MYERS and BARBARA MYERS,** | § § § | |
| **Defendants** | § | |

### DECLARATION OF LEEROY MYERS

My name is Leeroy M. Myers. I am competent to make this Declaration. I am one of the Defendants in this case. I was the only borrower on the Home Equity Note that is the basis for the transaction.

The copy of the invoice to Barbara Myers from J&K New Construction and Remodeling svcs, dated 8/07/2018 in the amount of $14,145.00, marked as Defendants' Exhibit 9, is a true and correct copy of the original. It represents just some of the repair work we had done to house that was made necessary by the damage caused by Hurricane Harvey in August 2017.

In compliance with 28 U.S.C. §1746 (b) I declare under penalty of perjury that the foregoing is true and correct.

 2/21/2023                                    _____
Date                                             Leeroy M. Myers