UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST, <br><br>Plaintiff <br><br>v. <br><br>LEEROY M. MYERS and BARBARA MYERS, <br><br>Defendants | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 22-88 |

**DEFENDANTS' MOTION TO
ALTER OR AMEND JUDGMENT [DOC. 37]**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   THE "JUDGMENT" IS MISLABELED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  THE JUNE 22 DOCUMENT IS NOT A FINAL JUDGMENT . . . . . . . . . . 2

III. STANDING HAS NOT BEEN ESTABLISHED . . . . . . . . . . . . . . . . . . . . . 4

IV.  WILMINGTON'S ARGUMENT SHOWS THAT LIMITATIONS EXPIRED IN 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.   THE 2017 JUDGMENT AND WILMINGTON'S OWN DOCUMENTS CONCLUSIVELY ESTABLISH WAIVER AND ISSUE PRECLUSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.     WILMINGTON'S AGENT HAS PROVIDED NEW EVIDENCE THAT UNDERMINES ITS CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII.    PROCEDURAL PARTICULARITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**CASES:**

*Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900 (Tex. App. – Dallas 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 127 S.Ct. 2652 (2007). . . . . . 10

*Hall v. Small Bus. Admin.*, 695 F.2d 175 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . 15

*Holland v. Westmoreland Coal Co. (In re Westmoreland Coal Co.)* 968 F.3d 526, (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . 5

*In re Griffith*, No. 22-10527 (5th Cir., Summary Calendar, January 30, 2023) . . . . 8

*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc) . . . . . . . . 7

*Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022 (5th Cir. 2015) . . . . . . . . . . 8

*Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773 (Tex. 2008) . . . . . . . . . . . 8

*United States v. Ayelotan,* 971 F.3d 394 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . 11

*United States v. Brocato*, 4 F.4th 296 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . 15

**SUMMARY OF ARGUMENT**

The June 22, 2023 document should be withdrawn or amended for all of the following reasons: (1) the document is mislabeled, (2) it is not a final judgment (3) Wilmington's standing has not been established, (4) limitations expired in 2019, (5)Wilmington and its predecessors waived the right to foreclose that accrued as early as 2009 and is precluded from re-litigating the issue; and (6) Wilmington's post-petition billing undermines the accuracy of its claims.

**ARGUMENT**

**I.    THE "JUDGMENT" IS MISLABELED**

The original June 2, 2023, minute entry on the docket incorrectly referred to deferring a Motion To Dismiss at Doc. 5 and granting the Plaintiff 45 days to file an amended complaint, apparently in an unidentified different case. Actually at issue in the telephonic hearing here on that day was Wilmington's Motion For Summary Judgment ("Motion"). Doc. 28. The entry was modified on June 12, 2023, to refer to the Motion. That modification[1] does not appear to have been served on counsel.

The modified entry was less inaccurate but still confusing. While it said the Court had granted the Motion no such document signed on June 2, 2023, ever

---

[1]This was the second time for a docket modification in this case. The January 27, 2023 entry was modified on February 16, 2023.

appeared on the docket.

On June 22, 2023, a telephonic request was made to the Clerk's office to see if the signed judgment had been misfiled in another case. It was not. No judgment had been signed. Only then, June 22, 2023, was the relevant document signed and entered.

The signed document was the proposed form filed by Wilmington as an exhibit to the Motion on January 23, 2023. Doc. 28-17.  The only change was the deletion of the term "[PROPOSED ORDER]."  However, it was not re-labeled as an "Order" or a "Judgment." Instead, it retained the defective title  "PLAINTIFF WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A/ CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST'S MOTION FOR SUMMARY JUDGMENT" that it had when it was originally filed six months earlier. Emphasis in the original. Doc. 37.

At a minimum, the signed document should be amended to correct Wilmington's titling mistake and be designated as an order or a judgment. It should not remain mislabeled as a motion.

## II.   THE JUNE 22 DOCUMENT IS NOT A FINAL JUDGMENT

The document signed on June 22, 2023, was originally filed by Wilmington on January 23, 2023. Doc. 28-17. That was a month before the Myers filed their Response on February 21, 2023, which raised five points of argument with issues in

the Motion, along with two relevant additional issues that were not mentioned in the Motion. Doc. 32. The January 23, 2023 document was also filed four months before the May 29, 2023, letter to chambers setting out the Fifth Circuit's January 30, 2023, ministerial reconfirmation of the standard the Supreme Court of Texas uses to determine waiver. Doc. 36.

That January 30, 2023, date from the Fifth Circuit has to be taken into account for its impact on the proposed order that was filed a week earlier on January 23, 2023.

Regardless of the ruling on waiver, the June 22, 2023, document is not a final judgment. It did not address all issues in the case. At a minimum, it failed to address and resolve:

a. The defects in the Affidavit supporting the Motion. Doc. 32, 4-7;

b. The expiration of limitations for a claim that accrued as early as 2009. Doc. 32, 14-17;

c. The lender's failure to apply the statutory requirement to extend limitations in Tex. Civ. Prac. & Rem. Code §16.036. Doc. 32, 17-20;

d. The conflict in the amount of interest demanded. Doc. 32, 20-21. Wilmington's new and conflicting demands they made in June 2023 are detailed below;

e. Wilmington's failure to prove it had standing despite the Bankruptcy Court Order that terminated the contract between New Century and MERS. Doc. 32, 21-23;

f. The offset the Myers are entitled to for repairing the property after

> Hurricane Harvey; Doc. 32, 23-24; and
>
> g.  Mrs. Myers' offset claim for her damages under Chapter 392 of the Texas Finance Code. Doc 32, 24.

These seven unresolved issues between the parties undermine the incorrect assertion in the June 22, 2023, document that it "disposes of all parties and all claims in this matter and is a final and appealable judgment."

## III.  STANDING HAS NOT BEEN ESTABLISHED

Wilmington's Reply inaccurately complains that "the matter here however does not involve an assignment from a new Century TRS Holdings, Inc. to MERS, but rather involves an assignment from a different entity, Home123 Corporation operating under the assumed name of New Century Mortgage Corporation, to MERS. As such the Notice of Rejection of Executory Contracts filed by New Century TRS Holdings, Inc. is irrelevant to the assignments in this case." Doc. 33, 7.

The caption on the Notice of Rejection of Executory Contract in the Chapter 11 bankruptcy case says the case is "Jointly Administered," a clear notice that more than one entity was involved. Doc 32, 3. The fourteen-line footnote tagged to the "et al." in the bankruptcy Debtor's name says that the Chapter 11 "Debtor" refers to about twenty-four entities. Those entities include both "New Century Mortgage Corporation" and "Home123 Corporation," the ones that Wilmington falsely said it

did not. *Id*.

The Notice says "that, pursuant to the terms of the Order, the above-captioned debtors and debtors-in-possession (the "Debtors") hereby provide notice of their intent to reject the above-referenced Executory Contract."

Wilmington's argument that the rejection of the contract was limited to only the New Century TRS Holdings, Inc. entity ignores what is on the face of the document. It is based on a failure of reading comprehension, not analysis of fact. There is no proof of the validity of the alleged assignment from New Century to MERS but there is admissible evidence of the rejection of the contract that had to be in place for the alleged assignment to take place.

"Federal courts are courts of limited jurisdiction. We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001)(citations omitted).

The issue was raised and the burden was not met. Wilmington cannot invoke the Court's jurisdiction, and it cannot be granted summary judgment, unless it can prove that it had standing when the case was filed. At a minimum, the June 22, 2023 document should be withdrawn pending proof of standing.

## IV. WILMINGTON'S ARGUMENT SHOWS THAT LIMITATIONS EXPIRED IN 2019

Both sides cited *Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 902-904 (Tex. App. – Dallas 2007, no pet.) for its holding that unequivocal action taken by the mortgagee that indicates that the entire mortgage debt is due, such as filing suit to enforce the lien, is sufficient to serve as notice of acceleration. Doc. 28, 9 for Wilmington; Doc. 32,14 for the Myers.

Wilmington's Reply failed to respond to the Myers' evidence that the loan was re-accelerated as a matter of law by the filing of the Second Rule 736 Application in 2015. "The clear application of *Burney* is that the filing of that Second Application was an acceleration that started the four year limitations period running no later than October 30, 2015." Doc. 32, 15.

By Wilmington's own *Burney* argument, limitations restarted in 2015 and expired in 2019, but the current case was not filed until 2022. The Complaint was filed after limitations expired and there was no basis for summary judgment in favor of Wilmington.

## V. THE 2017 JUDGMENT AND WILMINGTON'S OWN DOCUMENTS CONCLUSIVELY ESTABLISH WAIVER AND ISSUE PRECLUSION

The only finding announced by the Court at the June 2, 2023, telephonic hearing on the Motion [Doc. 28] was that there was no waiver of the right to enforce

the loan. That is contrary to the record.

As shown below, the issue of waiver was decided in Civil Action 16-1053 between Wilmington's predecessor in interest and the Myers. "Issue preclusion, or collateral estoppel, prevents the same party from relitigating an issue when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 290 (5th Cir. 2005) (en banc). This suit checks all three boxes." *Holland v. Westmoreland Coal Co. (In re Westmoreland Coal Co.)* 968 F.3d 526, 532 (5th Cir. 2020)(citation omitted).

Waiver has been established as res judicata and cannot be re-litigated here, but if it could, Wilmington's own documents would establish it conclusively.

Paragraph 16 in the Complaint says "[t]he Loan is currently due for the July 1, 2009, payment. Notice of default was provided to Borrowers on or about January 29, 2021, demanding payment of all amounts that were past due. A true and correct copy of said notice of default is attached hereto and incorporated herein as Exhibit 12." Doc. 1, 5. A copy of that letter is attached to Wilmington's Motion. Doc. 28-13, 2. Wilmington listed it as their Exhibit 1-12 in "Summary Judgment Evidence" [Doc. 28,2] and pointed to it in "Loan Default" [Doc. 28, 5], in "Fourth Application for Judicial Foreclosure" [Doc. 28, 7] and in "Wilmington Is Entitled to Summary

Judgment on Its Claim for Breach of Contract." Doc. 28, 9-10.

In finding that there was no waiver of the right to foreclose the Court ignored the indisputable fact on the record that Wilmington's predecessor Dictech's victory over the Myers in the 2016 limitations case, that was removed here, was completely based on their evidence of a pattern of intentional rescissions of the right to foreclose. They used the rescissions to extend limitations instead of proceeding to enforce their known right. Without those rescissions then the four year limitations period dating back to 2009 would have expired long ago and Wilmington could not have filed this case in 2022.

Those intentional actions by Ditech, that were ratified by Wilmington, were the embodiment of waiver. They showed "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right.'" Thompson v. Bank of Am. Nat. Ass'n, 783 F.3d 1022, 1025 (5th Cir. 2015) (quoting Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex. 2008))." *In re Griffith*, No. 22-10527 (5th Cir., Summary Calendar, January 30, 2023).

Here is Wilmington's argument proving waiver in the current Motion that the Court granted on June 22, 2023:

"Ditech removed the matter to this Court, under Case No. 16-cv-01053.

*Id.* Ditech prevailed on its Motion for Summary Judgment. *Id.* Final Judgment dismissing their claims with prejudice was entered against the Myers on June 14, 2017. *See* Final Judgment, attached as Exhibit 3. The Court found that the record had established that Ditech had effectively and timely rescinded the First 2009 Acceleration by several acts, including its August 19, 2013 notice and its acceptance of payments in September 2013. *Id*. at 6." Doc. 28, 6.

That rescission letter, written proof in a pattern of intentional waiver of a known right going back to 2009, was only one of the points raised in the detailed analysis in "II. The Motion Thoroughly Documents How the Claim Against the Myers Has Been Repeatedly and Methodically Waived for Almost Twelve Years" in the Myers' response to the Motion. Doc. 32, 5-14.

Then there was Wilmington's February 28, 2023, Reply [Doc. 33] to the Myers' response. Five of its eight pages of argument are in "II. Unilateral Actions of a Lender in Accepting Payments and Filing a Notice of Rescission of Acceleration Rescinds Acceleration of the Note and Stops the Statute of Limitations Applicable to Foreclosure of a Deed of Trust." Doc 33, 4-8. Wilmington made it very clear to the Court that "intentional conduct inconsistent with the [known] right" to foreclose had been taken a decade ago in 2013.

> "Rescission and abandonment of acceleration of the Note is even clearer when, as here, it is express: Green Tree Servicing, LLC's August 19, 2013 notice stated that "This letter is formal notice of the following: Mortgagee under the Deed of Trust reference below hereby rescinds the notice of acceleration dated October 5, 2009 and all prior notices of

acceleration. Mortgagee further agrees that the Borrower may continue to pay the indebtedness due Mortgagee pursuant to the terms of the debt secured by the Deed of Trust." (Doc. 32 at 10; Doc. 31-2 at 6, August 19, 2013 Notice of Rescission of Acceleration.)." Doc, 33, 5-6.

The document the Court signed on June 22, 2023, took the unusual step of completely denying Wilmington's trumpeting in the Motion, and then re-trumpeting in the Reply, their winning argument in the 2016 case, of the "intentional conduct inconsistent with the right" to foreclose back in 2013. It then used those denials of the record as the basis to grant Wilmington the summary judgment they requested as if there had been no waiver. There is no support for that in Rule 56.

If anything, Wilmington's evidence and argument have shown "that there is no genuine depute as to any material fact and [the Myers are] entitled to judgment as a matter of law" that there has been a pattern of waiver in enforcing the loan.

Where Wilmington benefitted from the finding of intentional waiver in the 2016 case, and twice made that argument here again in 2023, it is impossible for the Court to make a summary finding that there was no waiver. Wilmington cannot have it both ways. The Court cannot summarily overrule the foundation for the previous opinion related to the same loan. The Myers should not lose their homestead and their rights to a "heads I win, tails you lose" standard. "This "heads I win, tails you lose" approach cannot be correct."" *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 127

S.Ct. 2652, 2668 (2007).

In signing the "judgment" the Court also ignored the May 29, 2023, letter to chambers setting out the Fifth Circuit's January 2023 summary calendar opinion that ministerially upheld the definition of waiver promulgated by the Supreme Court of Texas. Doc. 36. That definition, repeated above, clearly applies to the undisputed facts of the case set out in Wilmington's Motion. It cannot be ignored. "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

The June 22, 2023, document should be amended because it is in conflict with the final judgment in the 2016 case and binding precedent from the Fifth Circuit, and the Supreme Court of Texas.

The Motion did not meet the Fed. R. Civ. P. 56 standard for granting summary judgment to Wilmington. It should have been denied. "[I]t is an abuse of discretion to apply an erroneous view of the law or to clearly err in assessing evidence." *United States v. Ayelotan,* 971 F.3d 394, 400 (5th Cir. 2019).

## VI. WILMINGTON'S AGENT HAS PROVIDED NEW EVIDENCE THAT UNDERMINES ITS CLAIMS

Selene Finance, Wilmington's current agent for servicing the loan, has recently begun sending monthly mortgage statements directly to counsel. The one dated May 3, 2023, some sixteen months after the case was filed on January 10, 2022, said the Interest due was $22,146.24 and Total Late Fees and Other Charges due were $19,777.99. Defendants' Exhibit 11.

That changed dramatically with the one dated June 15, 2023, a week before the June 22, 2023 document was signed. There, the Interest more than doubled, inexplicably jumping by more than $23,000 up to $45,763.51. Conversely the Total Late Fees and Other Charges dropped by ninety-seven (97%) percent, down to $624.00, only about three (3%) percent of the previous months' figure of $19,777.99. Defendants' Exhibit 12. Wilmington is bound by its agent's actions.

Those changes make summary judgment for Wilmington impossible. Those irreconcilable numbers have to be reconciled before an accurate judgment could possibly be awarded to Wilmington.

The June 22, 2023, document should be rescinded based on Wilmington's new evidence.

## VII. PROCEDURAL PARTICULARITIES

The foregoing is above and beyond the fact that on July 12, 2022, before there was actual service on the Myers, and before they ever appeared, the Court held an ex-parte status conference with Wilmington's counsel.

The docket entries for June 28, 2022, and July 8, 2022, each included "Return of Service Unexecuted as to Barbara Myers, Leeroy M. Myers re: Complaint filed." Doc. 15 and Doc. 16 are each a copy of the unsigned letter on McCarthy Holthus stationery saying "we are serving by mail pursuant to Rule 5(b)(2)(C)." That was not compliance with Rule 4. Summons, the rule that is required to be followed for this court of limited jurisdiction to acquire jurisdiction over the cause of action and the Defendants. It was repetitive proof of the failure to serve under Rule 4. There has never been service under Rule 4.

Four days later, on July 12, 2022, the minute entry on the docket shows there was a status conference that only Wilmington's counsel attended. Wilmington was the only party in the case and no default had been declared. The Court gave them "thirty (30) days to file a Motion For Summary Judgment."

That was preceded by the June 13, 2022, email from Plaintiff's counsel to the case manager that included copies of five letters that Defendants' counsel had sent attempting to explain the problems with lack of service and limitations. Defendants'

Exhibit 13. It begins with "[w]e would like to inform the court of what is happeeing behind the scenes in this case." It complains that defense counsel has been sending numerous letters about service by mail and statute of limitations defenses. The attached letters dated May 20th and May 27th and the ones dated June 7th and June 13th were subsequently filed as Doc. 23-8, 23-9, 23-10, and 23-11 respectively. They are included by reference.

The June 1, 2022, letter was not included. It is the one that, for a third time, brought up the criminal threat by Wilmington's process server at the Myers' home, that Wilmington has never addressed. It also showed that a complaint for that action had "been accepted by the Judicial Branch Certification Commission, the agency that regulates process servers, and they have set an answer deadline for the process server." Defendants' Exhibit 14. That complaint is still pending.

The lawyer who approved of serving the Complaint under Rule 5 instead of Rule 4 has still not been identified.

On June 14, 2022, Flag Day, the case manager responded by saying "The Court advises Mr. Joffe that if he would like to be involved in this case he must file an appearance, and will need to manage his decorum, otherwise there will be consequences." Defendants' Exhibit 13.

This is similar to where a law clerk did his own investigation in a case outside

the record. "We also likened the law clerk's investigation to a prohibited ex parte communication and stated that "[i]t was [the law clerk's] duty as much as that of the trial judge to avoid any contacts outside the record that might affect the outcome of the litigation." Id.; see also Hall v. Small Bus. Admin., 695 F.2d 175, 179 (5th Cir. 1983) (describing "law clerks" as "sounding boards for tentative opinions" who are "privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be" such that "the clerk is forbidden to do all that is prohibited to the judge")." *United States v. Brocato*, 4 F.4th 296, 303 (5th Cir. 2021).

The contents of the case manager's email make it clear that Wilmington's email and its five attachments were shown to the court, and had a impact on the case, when they were not part of the record.

### PRAYER

Mr. and Mrs. Myers pray that the June 22, 2023, document granting summary judgment for Wilmington be rescinded, that they be granted summary judgment that the case is dismissed for Wilmington's pattern of waiver in a case where they have not proven standing and limitations have expired, that the lien against their property has expired, and that they be granted any other relief to which they are entitled, at law or in equity.

Respectfully submitted,

/s/ Ira D. Joffe
Ira D. Joffe
State Bar No. 10669900
Attorney for Defendants
6750 West Loop South
Suite 920
Bellaire, TX 77401
(713) 661-9898
(888) 335-1060 Fax